## JOHN M. COURTNEY v. ELLIS WOODWORTH.

1. TITLE BOND; *Failure to pay Purchase-money; Ejectment.* Where a party sells land, executes to the purchaser a title bond therefor, receives a part of the purchase-money, takes several promissory notes for the deferred installments of the purchase-money, puts the purchaser in possession, (time not being of the essence of the contract by the terms of the bond itself,) he cannot, nor can his grantee who purchases with knowledge of the facts, maintain ejectment for said land merely because the party claiming under the title bond for want of funds fails to pay the balance of the purchase-money.

2. ———— *Remedy; Action to Rescind Contract; Foreclosure.* Where a purchaser holding under a title bond fails or refuses to pay the purchase-money when due, and fails to pay the same for a long time thereafter, and after being frequently requested to pay the same, the vendor may, where the equities are sufficient, seek relief by an action to rescind the contract and recover possession; or, he may treat the bond as an equitable mortgage, and bring his action to foreclose the equities of the purchaser and for the sale of the premises to satisfy the unpaid purchase-money.

*Error from Coffey District Court.*

EJECTMENT, brought by *Ellis Woodworth*, to recover the possession of 164 acres of land, and for the rents, issues and profits thereof. The petition was filed October 6th 1870, and alleged that *Woodworth* was the legal owner, and entitled to the possession of the premises described. *Courtney* answered, that he purchased the lands in question from James Woodworth, the father of said *Ellis*, on the 19th of September 1866, and had been in actual peaceable and exclusive possession and occupancy thereof ever since; that said purchase

·was evidenced by a certain title bond, which was duly recorded on the 19th of June 1869; that he had paid $200 of the purchase-money, etc. Said title bond is made a part of the answer, and is as follows:

"I, JAMES WOODWORTH, of the county of Page and state of Iowa, acknowledge myself indebted to John M. Courtney, of said county and state, in the sum of five hundred dollars, for the payment of which well and truly to be made I bind myself, my heirs, and administrators, firmly by these presents. Signed this 19th of September, 1866.

"The condition of the above obligation is as follows, to wit: Whereas the said James Woodworth has this day bargained and sold to the said John M. Courtney the following real estate situate in Coffey county, State of Kansas, to wit, [describes the land,] containing 164 acres, more or less, for which land the said Courtney agrees to pay the sum of five hundred dollars, as follows: $100 at the signing of these presents; $100 January 1st 1868, with interest at six per cent. from September 19th 1866; $100 January 1st 1869, with interest at six per cent. per annum from September 19th 1866; $100 January 1st 1870, with six per cent. interest from September 19th 1866; and $100 January 1st 1871, with six per cent. interest from September 19th 1866. Interest on said payments payable annually. Now if the said Courtney shall make said payments as above specified, and when the last of said payments is made said Woodworth shall make to said Courtney a good and sufficient deed for said lands, then this bond to be void, otherwise to remain in full force and effect."

The answer alleged that *Courtney* had given his four several promissory notes, of $100 each, for the deferred payments mentioned in the bond, and that he had paid and taken up the note which became due January 1st, 1868. Said bond was duly executed. The $100 to be paid on the execution of the bond is indorsed thereon as paid at the time, the receipt being signed by James Woodworth. The second trial of the action was at the June Term 1871, without a jury. The court found that both parties claimed title under said James Woodworth; that said title bond was executed and recorded, and said notes given and payments made, as alleged in the

answer; that *Courtney* took possession under his bond, and had remained in possession ever since, and had made valuable improvements thereon. Other findings are as follows:

"5th, That after the second note became due, (January 1st, 1869,) James Woodworth, by Ellis Woodworth his duly authorized agent, made repeated demands of the defendant that he must keep up his payments, and that no extension of time would be allowed him. 6th, That previous to the 1st of January 1869 the defendant entered into a verbal agreement with his son, John A. Courtney, to the effect that he was to pay off the said four notes as they became due and take the land. 7th, That in pursuance of this agreement the said John A. did pay off the first of said notes. 8th, That previously to the 26th of May 1869, the said John A. Courtney removed to the state of Illinois, and has not resided in Kansas since. 9th, That after said John A. had removed to Illinois, and some time previous to the 26th of May 1869, the defendant informed the said agent of James Woodworth that he had no means at that time of paying the notes then over due. 10th, That on the 26th of May 1869 James Woodworth and wife duly executed and delivered to *Ellis Woodworth*, the plaintiff in this suit, their deed for the land in controversy, which deed was on the 5th of June in the same year duly recorded. 11th, That said agreement between defendant and his son, and the removal of the latter from this state, was made known to the said agent of James Woodworth, by defendant, previous to the said conveyance by James Woodworth and wife to plaintiff. 12th, That at the time the plaintiff received said conveyance of this land from James Woodworth he had full knowledge of all the terms and conditions of the contract made between the said James Woodworth and the defendant.

"And as conclusions of law, the court finds, that the plaintiff, *Ellis Woodworth*, is the legal owner of the land described in his petition, and that he is entitled to the immediate possession of the same."

It was also shown that James Woodworth had died June 30th 1869; but the possession or whereabouts of the notes, after his death, was not shown. Judgment was given in favor of *Woodworth* for the recovery of the possession of the land, and for $300 damages for withholding possession, and *Courtney* brings the case here by petition in error.

*Rankin & McConnell, H. N. Bent,* and *Martin, Burns & Case,* for plaintiff in error:

1. It is not claimed by defendant in error that any notice of rescission of the contract had been given to *Courtney,* or that it had been forfeited by its terms; but the court found that the contract between James Woodworth and Courtney was ended by the conveyance to Ellis Woodworth May 26th 1869. This could not affect Courtney, as he was not a party, either active or passive, to the transaction. "As long as a contract is not forfeited by its terms, or rescinded by the *mutual* acts of the parties, or by the necessary acts of the vendor, on a failure to live up to its terms by the vendee, it remains a subsisting contract." Nash Pl. and Pr., 657, 658. The holder of the legal title has no right to the immediate possession of the land. Nash, 658.

Notes were given to secure the deferred payments. Said notes do not appear to have been transferred to Ellis Woodworth, and he must show a right to them before he can complain of their non-payment. The default of Courtney was from January 1st 1869, to June 30th 1869, at which time James Woodworth, the payee of the notes, died, and no one is shown to be authorized to receive the money due on the notes after his death.

2. "When land is sold on credit, and the deed to be made when the purchase-money is paid, the land at the time the sale is made becomes the vendee's, and the purchase-money the vendor's." *Douglas Co. v. U. P. Rly. Co.,* 5 Kas., 622. It is not contended that time is of the essence of the contract in this case.

Plaintiff below was a grantee of the vendor, and took the legal title in trust for the holder of the equitable title. *Lyons v. Bodenhamer,* 7 Kas., 455; *McKinzie v. Perrill,* 15 Ohio St., 162, 169. Woodworth was not the *owner* of the legal title; and he must not only show title, but also right of possession. "A vendor cannot maintain ejectment against his

defaulting vendee, without a notice to quit, or a notice that the contract is rescinded, or a demand of payment with notice of recsission." Brightly's Fed. Dig., 271, § 63. The contract could not be put an end to at the mere will of the vendor. Id., §§ 335, 336, 339, 340, 341, and authorities there cited.

Plaintiff below did not offer to and could not put Courtney in the position he was prior to his entry on the land, as the notes may be in the hands of third parties. Nash, 351; Ohio Dig., 614, § 36; Ind. Dig. 259. Nor did plaintiff below give Courtney any notice that he claimed possession of the land, or that he claimed the rental value thereof, prior to the commencement of this suit. Courtney went on the land and made valuable improvements with permission of the holder of the legal title, and such permission had not been revoked when this suit was commenced.

3. By the terms of the contract James Woodworth "bargained and sold" the land in controversy to Courtney, who entered upon the land by virtue of said bargain and sale as owner, and not as licensee — the law perhaps considering him as licensee but equity as the owner: 3 Lead. Cas. in Eq., 74 to 85; 34 Barb., 173; 46 Barb., 109. And while the contract was still subsisting, if the vendor convey the naked legal title to another, without the consent of the vendee, such other person does not obtain a real interest, but a personal one only, and equity will treat him as a trustee of the equitable title. 15 Ohio St., 162–169.

In a contract for the conveyance of land, on the payment of the purchase-money, the estate vests in equity in the vendee, and the vendor retains the legal title as a mere lien for his security for the unpaid purchase-money, and his interest therein is like a bond and mortgage, and may be foreclosed: 34 Barb., 173. The contract contains no clause of forfeiture upon a default in making any of the payments at the time specified; hence, time is not of the essence of the contract, but it must be rescinded by the *mutual* acts of the parties, or the necessary acts of the vendor, before he can be restored to

a *real* interest in the premises, and before he or his vendee can recover the possession from the purchaser claiming under the contract. We think the remedy of the vendor, for non-payment, under such a contract as the present one, is in a foreclosure of his lien, rather than a right to rescind. Ellis Woodworth, then, cannot recover possession from the vendee, first, because he obtained no real interest by the conveyance, and second, because the interest which he did obtain was for the sole benefit of the person sought to be evicted, and it must not be exercised against him. If, however, a court of equity should consider defendant in error entitled to the benefits of the contract, its judgment or decree would be, that the vendee pay the purchase-money due at the time of the commencement of the suit within some reasonable time, to be specified by the court, or be foreclosed—instead of the inequitable and unjust judgment of the court below in this case.

*Ruggles & Plumb,* for defendant in error:

1. It was not necessary that the contract between James Woodworth and Courtney should have been rescinded, or that notice of an intention to rescind should have been given to Courtney, in order to give the plaintiff below a right to maintain his action. 9 Wall., 290; 21 Wend., 230; 2 Ohio St., 326; 19 Ohio St., 433–438.

2. Upon the facts admitted by the pleadings, and found by the court, the court could not avoid finding as matter of law that the plaintiff below was the legal *owner*, and entitled to the immediate possession, of the premises. The conveyance of James Woodworth and wife to plaintiff conveyed the legal title. This would entitle him to the possession unless the defendant below showed a title such as would give him the right of possession; and this he did not do. The right of the plaintiff below to recover at law is beyond controversy: 9 Wall., 290; 1 Wend., 418; 21 id., 230. No notice to quit was necessary. Gen. Stat., 540, § 9.

Our statute permits an equitable title to be set up as a

defense. But the defendant below is not entitled to any relief in equity: 19 Ohio St., 438; 1 Superior Court Reports, 231, 253; 13 Vesey, jr., 224; 6 Wheaton, 528; 1 Peters, 383; 14 id., 172; 1 Johns. Ch., 370. In order that the equity of the defendant below should constitute a defense to the action he must show such a state of facts as would entitle him to specific performance. 2 Ohio St., 333. Specific performance will not be decreed when there has been laches, or where there has been a great change in the circumstances, or the value of the property has greatly changed. (See authorities above cited.) In this case the property had increased more than four-fold in value.

It is claimed by plaintiff in error that because of the payments, and because some "promissory notes" were given for the deferred payments, that therefore some mysterious equities arise. As to the giving promissory notes, a party is bound by the record he brings. Error must be affirmatively shown. There is not a word in the record to show that the notes given were "negotiable" promissory notes. There is no presumption about the matter. Unless the notes were negotiable, no injury could result to the defendant below, even upon his own theory. But we contend that the notes whether negotiable or non-negotiable cannot affect the case, as no relief was asked in reference to them, nor was any affirmative relief asked by defendant below in his answer. If defendant below had been asking specific performance, and the plaintiff below resisting it, then possibly the question of the notes might become material.

3. There was no error in the judgment. It was clearly established by the evidence that the yearly rental value of the premises was $150, and it had been more than two years after default was made in the payment, before the trial, during all of which time defendant below had occupied the premises. At most this would only be ground for modifying the judgment, if it should be found by this court that the money part of the judgment was too large. 4 Kas., 41.

29

The opinion of the court was delivered by

VALENTINE, J.: This was an action for the recovery of real property. The facts of the case are in brief as follows: James Woodworth was the owner of a certain piece of land. On the 19th of September 1866 he sold it to John M. Courtney (plaintiff in error, defendant below,) for $500. One hundred dollars of the amount was paid down, and four promissory notes, each for $100, were given for the balance. The first note became due January 1st 1868, and was duly paid; the second note became due January 1st 1869, the third January 1st 1870, and the fourth January 1st 1871. The last three notes have not been paid. At the time of the sale, Woodworth gave to Courtney an ordinary title bond, binding himself to make a deed for the land when the purchase-money should all be paid. Courtney was put in possession of the land by Woodworth, in 1866, soon after the sale, and he has remained in peaceable and quiet possession ever since, and has made valuable improvements thereon. After the second note became due James Woodworth, through his agent Ellis Woodworth, demanded payment of the same, and told Courtney that the time for payment could not be extended. Courtney said he could not pay it then, for the want of means. Nothing was then or at any other time said about a rescission of the contract, or about Woodworth taking the land back. On the 26th of May 1869 James Woodworth conveyed, by a quitclaim deed, all his right, title, and interest in and to said land to said Ellis Woodworth, who had full knowledge of Courtney's rights. On the 30th of June 1869 James Woodworth died. What became of the three notes that were not paid, or whether an administrator was ever appointed, is not shown by the record. On the 6th of October 1870, (before the last note was yet due,) Ellis Woodworth commenced this action as plaintiff to recover said land from Courtney. We do not think that he is entitled to maintain the action. Time was not of the essence of the contract, as it was originally made, nor did it become such by any subsequent acts of the

parties, or by any subsequent circumstances. Under and by virtue of the contract Courtney took possession of the property, took the right to hold and enjoy it, and gave his money and promissory notes in payment therefor. The entire equitable estate passed to him. Everything passed to him except the mere legal title, and that was held by Woodworth merely as a security for the payment of the notes. The conversation, or conversations, held between Courtney (and his son) and Ellis Woodworth from January 1st 1869, to May 26th 1869, did not rescind the contract. There was nothing said during said conversations about rescinding the same, or about getting the land back. These conversations were not even notices that Woodworth intended or desired to rescind. They were simply notices that Woodworth wanted his money, and would not extend the time of payment; and it would have been natural and not unreasonable for Courtney to believe that Woodworth intended to sue him on the note that was due. The court below finds that the contract was not rescinded by these conversations, but that it was subsisting up to May 26th 1869, when James Woodworth attempted to convey the property to Ellis Woodworth. The court below finds that by this attempted conveyance the contract was rescinded; but as no notice had been given that Woodworth intended to rescind the contract this supposed conveyance could not work a rescission of the same. Whether this is a case in which one party could rescind, without the consent of the other, we do not decide. But supposing it to be such a case, still one party could not rescind without the consent of the other unless he should first give an *explicit notice*, reasonable in its terms, that unless the other party should perform within a certain time *he would then rescind the contract*. Such notice was not given. Whether mere lapse of time could in any case like this give the grantor the right to consider the contract as rescinded, it is not necessary for us now to consider, for the lapse of time in this case was certainly not great

enough to authorize Woodworth to rescind, or to consider the contract as rescinded.

When Ellis Woodworth obtained his supposed rights in the property one note only was due, and that had been due less than five months. In less than six months after this note became due James Woodworth, the payee of the note, died. Whether there has ever been any person in existence since that time to whom payment of that note, or payment of either of the other two notes, could legally be made, is not shown by the record; nor is it shown whether the notes still belong to the estate or to some third party. The defendant in error probably relies almost entirely on the case of *Kirby v. Harrison*, 2 Ohio St., 326. But the case at bar differs in many essential particulars from that case, among which are the following: In that case there were no notes given; the grantee was never put in possession of the property; he never made any improvements on it; he never exercised any acts of ownership over it, not even paying the taxes and street assessments on it, (for it was a lot in the city of Cincinnati,) but allowing the grantor to pay them; the delay in payment was much greater in that case than in this, being thirteen and a half months after the first payment became due before the grantor attempted in any form to rescind the contract, and two payments were then due; and during this thirteen and a half months the grantor could not even hear from the grantee, who lived in another state, (Virginia,) although the grantor had written two letters to him. The grantee in that case seemed to have plenty of money, but willfully chose to use it for other purposes. No offer was made to pay the grantor until three years and four months after the first payment became due, and then it was a conditional offer, and lacked $180 of being sufficient in amount. A sufficient amount was never offered or tendered, although there was a person in being in that case at all times to whom payment could legally have been made; and the case was not tried for over six years after the first payment became due. And in that case the grantor did not even then claim that he

had a right of himself to rescind the contract; but he commenced an action in the court of common pleas for that purpose, (not an action of *ejectment*, as the action at bar is,) and asked the court to *rescind the contract;* and it was not then rescinded for more than six years after the first payment became due, and then it was done by the court, and not by the grantor himself.

The judgment of the court below is reversed, and cause remanded, with instructions that the court below render judgment in favor of the defendant therein and against the plaintiff for costs.

All the Justices concurring.