GEORGE OPDYKE V. GEORGE A. CRAWFORD, *et al.*

TAX LIEN; PRIORITY; *Payment from Proceeds of Sale; Foreclosure of Mort-*
*gage.* In an action on a promissory note and a real-estate mortgage, where
there are taxes due on the mortgaged property, the court should, on the
application of the plaintiff, in rendering the judgment on the note and
mortgage, order that the taxes due on such mortgaged property be first
paid out of the proceeds of the sale of such mortgaged property.

*Error from Bourbon District Court.*

FORECLOSURE of mortgage, brought by *Opdyke.* The
defendants were *George A. Crawford,* St. Louis Mutual Life
Insurance Company, Risden Owen, Ira D. Bronson, Hap-
good & Co., James Hart, and R. & J. S. McCord. The
mortgage was given in July 1871, and the mortgaged prop-
erty consisted of four unimproved lots in the city of Fort
Scott. *Crawford* was the mortgagor. The other defendants
were incumbrancers subsequent to the mortgage-lien in favor
of *Opdyke.* Trial at May Term 1876. The court found the
liens on the mortgaged property, and the priority thereof, as
follows: 1st, the mortgage-lien in favor of *Opdyke;* 2d, a
mortgage-lien in favor of the St. Louis Mutual Life Insur-
ance Company; 3d, a judgment-lien in favor of Owen; 4th,
a judgment-lien in favor of Bronson; 5th, judgment-liens in
favor of Hapgood & Co., Hart, and McCords. The amount
of *Opdyke's* lien was $3,507, for which a personal judgment
was entered against *Crawford,* and a decree made foreclosing
the mortgage held by *Opdyke,* directing a sale of the mort-
gaged premises, and ordering that "out of the proceeds of
said sale the costs of the action and of making sale shall be
first paid, and the remainder thereof shall be applied to the
payment of the plaintiff's judgment herein, and the residue
thereof, if any there be, shall be brought into court, to abide
the further order of this court." Before the final decree was
entered, *Opdyke* asked the court to ascertain and find the
amount of unpaid taxes and assessments on the mortgaged
premises, and to order and direct that such taxes and assess-

ments be first paid out of the proceeds of the sale; and to this end, plaintiff offered testimony showing that since the date of his mortgage "the property has been subjected to McAdam assessments and general and sidewalk taxes, which with penalty and interest amount to $2,510, which sum remains as a lien upon said property, as shown by the books of the county treasurer; that said property could not now be appraised for over $3,800; that because of said taxes and assessments, and the mortgage and judgment-liens thereon, the mortgaged premises would not be purchased by any person other than the plaintiff," and submitted that under the findings already made, and the proposed decree thereon, the plaintiff would be compelled to pay two-thirds the appraised value, ($2,534,) and then be compelled to pay said sum of $2,510 for taxes and assessments due thereon, to protect his title under the decree. The court refused to make any finding as to the taxes and assessments, and refused to decree that the taxes and assessments be first paid from the proceeds of the sale. *Opdyke* excepted to such refusal, and brings the case here. (The plaintiff in his petition for foreclosure had alleged the amount due upon the lots for taxes and assessments, and the bidding-in of the property by the county at tax sale, and prayed for general equitable relief.)

*Eugene F. Ware*, for plaintiff in error:

The gist of this case I suppose to be contained in the following proposition: Suppose a mortgage creditor obtains judgment for $3,500, and upon a special execution levies upon the mortgaged property worth $3,000, upon which property $2,500 of taxes are due: the property must sell for not less than two-thirds of its value; consequently, if the rule of the court below is correct, first, no outsider *will* buy; second, the plaintiff *must* buy; third, he must pay at least $4,500 for the property. It is no answer to say that the plaintiff might pay off these taxes before trial, and have them included in the judgment. A suitor has a right to justice without buying it. It is not justice to compel a

plaintiff to raise money and pay his debtor's debts, to be paid back at seven per cent. interest, when the debtor gets tired of litigation, and netting the debtor 43 per cent. profit in the ,meantime, (that being the difference between the two rates of interest.) The case of *Wilson v. McKenna*, 52 Ill. 43, is in point, that a suitor is not compelled to purchase justice in such a way. The propriety and justice of paying taxes and assessments out of the proceeds of sale was recognized by Chancellor Kent in 1820; 4 Johns. Ch. 542. In 2 Edw. Ch. (N. Y.) 631, a mortgage was foreclosed and land directed to be sold. It did not sell for over two years. In the meantime large amounts of taxes and assessments became due. The plaintiff paid them and was reimbursed from the proceeds. The New York rule in these cases is well illustrated in *Easton v. Pickersgill*, 55 N. Y., which shows that the payment of taxes and assessments from the proceeds is a long-established custom. In *Cord v. Southwell*, 15 Wis. 211, the court below ordered the liens of taxes and assessments to be paid from the proceeds. The point was raised, and the supreme court decided that the order was proper. A recent case is found in *Tuck v. Calvert*, 33 Md. 209, which says that when land is sold under decree in equity, the taxes must be first satisfied from the proceeds. In the case at bar, it is evident that the property never would sell to an outside purchaser, because he would have to pay more for the property than it was worth. This fact was brought to the knowledge of the court; and the point was appreciated by the court, and commented upon by the court. Now, it is a well-known rule of equity jurisdiction, that when a court of equity takes charge of a case, it forever keeps control of it until complete justice has been done, and draws to itself every incidental power necessary to carry out its decrees. Imagine an *equity court* decreeing land to be sold, and being unable to get it off its hands, although buyers stood around ready to pay the full value of the property! The creditor standing before the court, languishing for his money! the debtor, owning land subject to sale! the buyers, willing to give $3,000 for three

thousand dollars worth of property; and the court powerless! All at once a bright idea strikes the court, and it suggests, "some one might buy it, and pay the taxes too." Might pay $5,500 for three thousand dollars worth of property! Breathes there a man with soul so dead, as to think Kansas contains so phenomenal a buyer! and must we wait *until he comes?* The court as a court of equity had the right to make the order we asked for, and to incorporate it into the decree; and to refuse to do so was error.

*Hill & Sallee, C. O. French,* and *McComas & McKeighan,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a promissory note and a real-estate mortgage. A personal judgment was rendered in favor of the plaintiff, George Opdyke, against the defendant Crawford for the sum of $3,507, and the mortgaged property was ordered to be sold to satisfy this personal judgment. At the time this judgment was rendered there were taxes due on said mortgaged property amounting to $2,510, and the property itself was not worth more than $3,800. The plaintiff asked that the mortgaged property be sold in accordance with law, that the taxes be first paid out of the proceeds thereof, and that the balance of the proceeds, if any, should then be applied in part payment of the plaintiff's said personal judgment. But the court refused, and rendered judgment as above mentioned. Under this judgment, and indeed under any judgment which might legally have been rendered, the property should first be appraised and then not sold for less than two-thirds of its appraised value. The only question now to be considered is, whether the court below erred in refusing to render the judgment as asked for by the plaintiff. We think it erred. Taxes are always a lien upon the real estate upon which they are imposed, and are always prior and paramount to any other lien or incumbrance. And courts of equity, in the foreclosure of mortgages, always have the power to ascertain what are liens

upon the mortgaged property, to determine their priority, and to order that such liens be discharged out of the proceeds of the sale of such real estate in accordance with their priority. (See authorities cited by counsel for plaintiff in error.) In this state a holder of a mortgage has two remedies: *first*, he may pay the taxes, and then recover them back from the mortgagor, or have them included in the judgment rendered in his favor on foreclosure; or, *second*, he, as well as the mortgagor, may neglect to pay the taxes, and then he may have the amount thereof paid out of the proceeds of the sale of the mortgaged property on foreclosure. The statutes upon this subject read as follows:

"In cases where lands are mortgaged, if the mortgagor fails or neglects to pay the taxes, or in case said mortgagor permits any land so mortgaged to be sold for any taxes, the mortgagee may pay said taxes, or redeem any land so sold for taxes. And on the payment of any such mortgage, or in the action to enforce the same, such mortgagee may demand the taxes so paid, with interest thereon at the rate of twelve per cent. per annum, or include them in any judgment rendered on the mortgage; and any taxes so paid by any mortgagee shall be a lien on such land so mortgaged until the same be paid."—(Laws of 1876, page 97, § 148; Gen. Stat. of 1868, page 1062, § 135.)

"Whenever any lands so held by tenants-in-common, shall be sold upon proceedings in partition, or shall be taken by the election of any parties to such proceedings, *or where any real estate shall be sold at judicial sale,* or by administrators, executors, guardians, or trustees, the court shall order all taxes and penalties thereon against such lands to be discharged out of the proceeds of such sale."—(Laws of 1876, page 70, § 56; Gen. Stat. of 1868, page 1034, § 40.)

And as sustaining the rule above stated, see *Ketchum v. Fitches,* 13 Ohio St. 201; *Tuck v. Calvert,* 33 Md. 210, 224, 225; *Easton v. Pickersgill,* 55 N. Y. 310; *Brown v. Evans,* 15 Kas. 88, 92, 93.

The judgment of the court below will be modified, so that taxes due on the mortgaged property may first be paid out of the proceeds of the sale of such property. In every other respect the judgment of the court below will be affirmed.

All the Justices concurring.