GEORGE C. T. SEAMAN v. T. S. HUFFAKER, ELIZA A. HUFFAKER AND J. W. McMILLAN.

PARTNERSHIP; *One Partner Purchasing Interest of Another Partner; Mortgage to Secure Partnership Debt; Sale to Pay Debt and Taxes.* H. and M. as partners owned certain personal and real property. M. by a written contract, sold all his interest therein to H., H. agreeing to pay therefor all the partnership debts and $1,500 to M. H. took immediate and exclusive possession of all the property, and M. abandoned the same. H. then mortgaged the real estate to Z., and to secure a partnership debt. Afterward Z. obtained a judgment against H. on the mortgage and for the said debt, and for the sale of the mortgaged property to pay said debt. Afterward S. became the owner of said judgment and all Z.'s interests therein. Afterward S., in order to preserve his own lien on said mortgaged property, paid certain taxes thereon, which taxes were a lien thereon. *Held*, That although the legal title to said mortgaged property may have been and may still be in H. and M. conjointly, yet, that H. when he mortgaged said property, was the undoubted equitable owner thereof; that he had a right to mortgage the same to secure the payment of said partnership debt, and that the plaintiff S. may now have judgment against both H. and M., decreeing that said mortgaged property be sold to pay said partnership debt, and also to pay said taxes.

*Error from Lyon District Court.*

ACTION brought in the district court of Morris county, by *Seaman* against *Huffaker* and two others, defendants, to modify a certain judgment, and to have certain taxes paid by plaintiff declared to be a lien upon certain real estate. At the April Term, 1876, of the district court of Morris county, the place of trial was duly changed to Lyon county. Trial at March Term, 1877, of the district court, and findings and judgment for defendants. New trial refused, and *Seaman* brings the case here for review. The facts are sufficiently stated in the subjoined opinion.

*Gillett & Forde*, for plaintiff.

*Ruggles, Scott & Lynn*, for defendants.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Seaman against Huffaker and wife and McMillan, to modify a certain judgment, and to have certain taxes paid by plaintiff declared to be a lien on certain real estate. It seems that on November 1, 1869, Huffaker and wife executed a mortgage to Zinn, Aldrich & Co. on lot 16, block 8, in the city of Council Grove, Kansas, to secure the payment of seven certain promissory notes; that on November 28, 1870, Zinn, Aldrich & Co. obtained a judgment on these notes and mortgage against Huffaker and wife for $2,875.08 and costs, and for a sale of the mortgaged property. Afterward, the plaintiff Seaman became the owner of said judgment, and of all the rights of Zinn, Aldrich & Co. connected therewith. Afterward, the plaintiff ascertained that the only interest which Huffaker and wife ever had in said mortgaged property was as follows: The legal title to the south 110 feet of said lot was, at the time said mortgage was given, and afterward, in "James W. McMillan and Thomas S. Huffaker, partners under the firm-name of J. W. McMillan & Co.," and neither Huffaker and wife nor McMillan ever had any interest in

the other portion of said lot. Huffaker was in the possession of the said south 110 feet of said lot, and was the equitable owner of the whole of said 110 feet. After the plaintiff became the owner of said judgment, he paid taxes on said 110 feet amounting to $2,269.96. The object of this action was to have said judgment so modified as to make it a lien upon only said 110 feet, and also to have said taxes declared to be a lien on said 110 feet, and to have it, and it only, sold to satisfy said judgment and costs, and to pay said taxes.

The case was tried in the court below by the court without a jury, and the court made the following findings of fact and conclusions of law, to wit:

1. That on the 28th day of November, 1870, in the district court of Morris county, Kansas, the firm of Zinn, Aldrich & Co. (mentioned in plaintiff's petition) duly obtained a judgment against the defendant, T. S. Huffaker, for the sum of $2,875.08, with $10.30 costs, with interest at the rate of 10 per cent. per annum till paid, and also the foreclosure of a mortgage given by the defendants, T. S. and Eliza Huffaker, to secure the payment of the notes upon which said judgment was rendered upon the following real estate in Morris county, Kansas, to wit: Lot No. 16, in block No. 8, in Council Grove.

2. That on the 3d day of February, 1871, the said firm of Zinn, Aldrich & Co. were duly adjudged bankrupts by the district court of the United States for the southern district of New York; that during the pendency of said bankruptcy proceedings, one John H. Wyman was duly appointed trustee of said bankrupts, and immediately qualified and entered upon the discharge of the duties of this trustee as required by law.

3. That said bankrupts, Zinn, Aldrich & Co., did, on the 3d day of February, 1871, duly assign and transfer to said trustee all their estate and effects, including the judgment aforesaid.

4. That on the 21st day of April, 1873, the said John H. Wyman, as such trustee, did, for a valuable consideration, duly sell and assign said judgment to the plaintiff in this action.

5. That said plaintiff has ever since said 21st day of April, 1873, been and still is the owner and holder of the judgment.

6. That on the 18th day of November, 1871, there was paid by the defendant, T. S. Huffaker, to apply on said judgment, the sum of $600.

7. That between the 6th day of February, 1871, and the 29th day of June, 1874, eight several orders of sale were duly issued upon said judgment and placed in the hands of the sheriff of said Morris county, and each and all of them by him duly returned unsatisfied for want of bidders.

8. That the accruing costs, by reason of said orders of sale, amount to the sum of $166.65.

9. That the defendants T. S. and Eliza Huffaker permitted 110 feet off of the south end of said lot No. 16 to be sold for delinquent taxes on the 2d day of May, 1871, for the sum of $272.35; that the purchaser at said tax sale paid the taxes on said 110 feet for the years 1871, 1872 and 1873; that said 110 feet was a part of the premises upon which the said judgment of Zinn, Aldrich & Co. was adjudged to be a lien, and the only portion of said lot 16, block 8, that either said Huffaker or said McMillan ever owned or ever had any interest in, was said 110 feet off of the south end of said lot 16.

10. That on the 7th day of April, 1874, this plaintiff, to protect his lien on said premises, and in order to prevent the same from going to tax deed, redeemed said premises from said sale by paying the county treasurer of said Morris county the sum of $2,269.96 that amount being necessary to redeem from said sale; that during the year 1868, and until sometime in the month of September, 1869, the defendants, T. S. Huffaker and J. W. McMillan, were partners, doing business under the firm-name of J. W. McMillan & Co., engaged in the general mercantile business in Council Grove, Morris county, Kansas.

11. That sometime in the month of September, 1869, the said defendant, T. S. Huffaker, purchased the entire interest of J. W. McMillan in the property of said partnership, which consisted in a large amount of dry goods, groceries and general merchandise, and also the premises aforesaid, to wit, 110 feet off of the south end of lot No. 16; that said McMillan's interest was an equal undivided half of all of said property.

12. That the conditions of said sale were, substantially, that the said Huffaker was to assume and pay all the debts and liabilities of the firm of J. W. McMillan & Co., including the debts and liabilities of J. Spencer & Co., of whom the firm of J. W. McMillan & Co. were the successors in business, and to further pay the said McMillan the sum of $1,500.

13. That at the time of the purchase of McMillan's interest in said partnership property by said Huffaker, all the goods, wares and merchandise were turned over to said Huffaker, including the south 110 feet of said lot No. 16, who has ever since remained in the actual possession of and exercised entire and exclusive control over said premises, and has not at any time since accounted to McMillan for any rents, nor has McMillan paid any taxes on said premises, or demanded the payment of any rent, nor has he exercised any acts of ownership or control over said premises since the time of said sale.

14. That the consideration for the notes and the mortgage given to secure their payment and upon which the said judgment of Zinn, Aldrich & Co. was obtained against the defendants, T. S. Huffaker and Eliza Huffaker, was for goods, wares and merchandise purchased of said Zinn, Aldrich & Co., by the said firms of J. Spencer & Co. and J. W. McMillan & Co., before the dissolution of said partnerships, and was a part of the debts and liabilities which the said Huffaker agreed to assume and pay.

15. That at the time of the purchase by Huffaker of the interest of McMillan in the partnership property, the said firm of J. W. McMillan & Co. had and were seized of a clear and connected title in fee simple from the United States to the south 110 feet of lot No. 16, block 8 aforesaid, and that said title appeared of record in the office of register of deeds of said Morris county at the time of the execution of the mortgage in question.

16. That the said Huffaker has never paid or caused to be paid all the debts and liabilities of said firms of J. Spencer & Co. and J. W. McMillan & Co., nor has he paid or caused to be paid all of the said sum of $1,500 to the said J. W. McMillan.

17. That the said J. W. McMillan has never executed to said T. S. Huffaker any conveyance in writing of his interest in said south 110 feet of said lot No. 16.

18. That the agreement between said T. S. Huffaker and said J. W. McMillan, for the purchase and sale of McMillan's interest in said partnership property of J. W. McMillan & Co., was in writing.

19. That said T. S. Huffaker never at any time owned any interest in said lot No. 16, save and except that part described as being the south 110 feet of said lot; that at the time of the execution of the mortgage in question, the said T. S.

Huffaker was the owner of one equal undivided half of said south 110 feet of said lot No. 16, block 8, and the said J. W. McMillan was at that time and still is the owner of the other undivided one-half.

20. That there is now remaining due and unpaid on said judgment of Zinn, Aldrich & Co., including interest and costs, the sum of $4,069.03.

21. That there is now due said plaintiff for money paid for the purpose of redeeming the premises in controversy from tax sale, including interest at seven per cent. per annum, the sum of $2,701.34, making a total sum of $6,770.37.

Conclusions of law based upon the foregoing facts:

*First:* That the plaintiff is entitled to a decree so modifying the judgment and decree obtained in the district court of Morris county, Kansas, on the 28th day of November, 1870, in favor of Zinn, Aldrich & Co., and against T. S. and Eliza Huffaker, as to make such judgment and decree a lien on one equal undivided half of the south 110 feet of lot 16, in block No. 8, instead of on the whole of said lot as it now stands.

*Second*: That the defendant, J. W. McMillan, is entitled to a judgment and decree declaring him to be the owner of the equal undivided one-half of the south 110 feet of lot No. 16, in block 8, in Council Grove, Morris county, Kansas, and for his costs herein.

The court below rendered judgment in accordance with the foregoing conclusions of law; that is to say, the court modified the former judgment by decreeing that it should be a lien upon only the undivided half of the south 110 feet of said lot 16, instead of upon the whole of the lot, as the judgment was formerly rendered; and the court rendered judgment in favor of McMillan and against the other parties for the other undivided half of said 110 feet of said lot, and for costs; and the court did not render any judgment concerning said $2,269.96 taxes paid by the plaintiff, but left the plaintiff to lose the same, one-half for the benefit of Huffaker, and the other half for the benefit of McMillan.

The foregoing findings of fact are in some respects more favorable to McMillan than the evidence would warrant; more favorable than McMillan, from his own testimony, would seem to claim; more favorable, we suppose, than Huf-

faker would desire; and certainly more favorable than the plaintiff would desire. McMillan's defense in the court below was made by the same attorneys who defended for Huffaker. Probably Huffaker, now, as well as the plaintiff, would wish to have that part of the judgment of the court court below which awards to McMillan an undivided half of said 110 feet of said lot, reversed, and perhaps McMillan, from his own testimony, does not care. Neither McMillan nor Huffaker has had any brief filed or oral argument made in this court; hence, we cannot tell just what either of them would desire at the present time.

From the evidence it appears that Huffaker not only took exclusive possession of said south 110 feet of said lot 16, after he purchased the interest of McMillan therein, but he also expended a large sum of money in completing the building thereon, which was only partially completed when he purchased the same. McMillan had notice of the mortgage soon after it was executed (if not at the time or before), and recognized it as a valid mortgage on the whole of said 110 feet of said lot, and offered by letter to purchase the mortgaged premises from Zinn, Aldrich & Co. while they still held the mortgage, and before the present plaintiff, Seaman, had any interest therein, and while McMillan (as well as Huffaker, his partner,) was still liable for the debt for which the mortgage was given. McMillan, however, may still be liable for the debt; for no one can tell from the evidence, or from the findings, whether the debt as to McMillan is yet barred by the statute of limitations or not. The evidence shows that McMillan was absent from the state, but whether all the time or not, or how much of the time, the evidence does not show. It is not certain from the evidence whether Huffaker paid McMillan all he owed him, or all he agreed to pay him, or not. If anything is yet due, however, from Huffaker to McMillan, it is probably only a very small amount. The court below found, in its sixteenth finding, that Huffaker had not paid all that was due from Huffaker to McMillan. But how much of the same still remains unpaid, the court

did not find. All of the latter portion of the nineteenth finding of the court below is merely a conclusion from the other facts found by the court, and it depends for its correctness solely upon the question whether the other facts as a matter of law would give to McMillan the present title to an undivided half-interest in said 110 feet of said lot, absolutely and unconditionally, *as against the present plaintiff, Seaman.* Huffaker, however, has no right to complain of the finding, as it was probably made at his instance, though probably Huffaker did not want such a judgment rendered upon it as was actually rendered thereon. Huffaker probably wanted to defeat the plaintiff, but did not want McMillan to reap the benefit of the plaintiff's defeat; that is, he wanted to prevent the plaintiff from selling that portion of the lot which he claimed that McMillan owned; but he did not want the court to render a judgment against him (Huffaker), as well as against the plaintiff, decreeing that McMillan did own it, and giving it to McMillan.

But taking *the findings of fact* just as they are, and still we think that the court below erred in its conclusions of law, and in the judgment it rendered thereon.

The findings of fact show that Huffaker and McMillan were partners; that as partners, they owned said real estate upon which said mortgage was afterward given, as well as certain personal property; that as partners, they owed said debt to Zinn, Aldrich & Co., for which the mortgage was given; that McMillan, by a *written* contract, sold all of his interest in said real estate, as well as in said personal property, to Huffaker, before said mortgage was given; that Huffaker took immediate, actual and exclusive possession of the whole of the property; that McMillan wholly abandoned the same; that Huffaker, soon after his purchase, mortgaged the property to Zinn, Aldrich & Co., to secure the payment of said partnership debt; that McMillan never made any objection thereto; that McMillan was liable for the debt at the time said mortgage was given, and perhaps he may still be liable therefor; that Huffaker took all the partnership prop-

erty, and was to pay all the partnership debts; that although Huffaker was to pay McMillan $1,500 for his partnership interest, yet the findings do not state or show that there was any agreement or understanding between the parties that Huffaker should forfeit his interest in the partnership property sold to him under any circumstances whatever, or that McMillan should have any lien thereon under any circumstances whatever; that although Huffaker may have failed to pay some portion of that debt and of the partnership debts, yet what amount of either is yet due is not shown. So far as the findings show, the debt to Zinn, Aldrich & Co. may be the only one of the partnership debts yet remaining unpaid, and the individual debt to McMillan may have all been paid except a few cents. The plaintiff Seaman was compelled to pay said taxes in order to preserve his lien on said real estate.

From the foregoing findings, we think it follows that at the time said mortgage was given Huffaker was the equitable owner of the whole of the said 110 feet of said lot; that he had the legal title to one undivided half thereof, and that McMillan had the legal title to the other undivided half; or, in other and perhaps more appropriate words, Huffaker was the real owner of the whole of the property, and Huffaker and McMillan simply held the legal title thereto conjointly, in trust for the use and benefit of Huffaker.

We suppose it will not be questioned that the equitable owner of real estate has the right to mortgage the same. (*Jones v. Lapham,* 15 Kas. 540, 544; *Curtis v. Buckley,* 14 Kas. 449.) And generally, he will not forfeit his equitable estate, unless it is equitable that he should forfeit it, or unless he has done or failed to do some act for which it was agreed or understood that he should forfeit the same. (*Courtney v. Woodworth,* 9 Kas. 443; *Holcomb v. Dowell,* 15 Kas. 378.) Also, partnership debts have priority as against partnership property over individual debts; and this real estate was presumptively placed in the hands of Huffaker for the purpose of paying the partnership debts; and he undoubtedly had the right to use it for that purpose. *Wilson v.*

*Hunter,* 14 Wis. 683; *Mabbett v. White,* 12 N. Y. 443, 454; *Whitton v. Smith,* Freeman Ch. (Miss.) 231. As the plaintiff was compelled to pay said taxes to preserve his mortgage lien, he may now have judgment against the land therefor. (*Stanclift v. Norton,* 11 Kas. 218; *Sharp v. Barker,* 11 Kas. 381; *Waterson v. Devoe,* 18 Kas. 223; *Opdyke v. Crawford,* 19 Kas. 604.) And upon the theory that the property was in controversy, that McMillan really claimed to own the undivided half thereof, and supposing that McMillan was entitled to recover such undivided half as was held in the court below, still the plaintiff should recover for the taxes he paid and have them declared a lien upon the said real estate. (Gen. Stat. 1062, § 136; Laws of 1876, page 97, § 149.)

The judgment of the court below will be reversed, and cause remanded with the order that judgment be rendered in favor of the plaintiff and against the defendants, in accordance with this opinion.

HORTON, C. J., concurring.

BREWER, J., not sitting.