No. 20,780.

THE LOGAN-MOORE LUMBER COMPANY, *Appellant,* v. M. G. BOWERSOCK et al., *Appellees.*

SYLLABUS BY THE COURT.

1. MECHANIC'S LIEN—*Written Release Construed.* A recital in writing purporting to release a mechanic's lien, that the "owner" has paid for the construction of the house involved, is held to refer to payments made by the person in possession under a contract entitling him to a deed upon the completion of the purchase price, and not to the holder of the legal title.

2. SAME—*Waiver of Mechanic's Lien—Inures to Whose Benefit.* A waiver of a mechanic's lien expressed to be made in favor of any mortgagee of the property inures to the benefit of one who had lent money to the purchaser of the property under an arrangement that the original owner should hold the title as security both for the balance due on the purchase price, and the amount of such loan. And

*held,* that the pleadings and evidence justified a finding that such an arrangement had been made in this case.

3. SAME. Such a waiver is held to preclude the signer from asserting a lien except in subordination to that of the mortgagee.

4. BUILDING CONTRACT—*Abandonment by Owner of Property—Mortgagee in Possession May Complete Building—Lien.* Where the owner of property on which there is a mortgage begins the construction of a house thereon, but before its completion abandons the work and disappears, the mortgagee who takes possession and completes the building according to the original plans is held to have a lien for the amount so expended superior to a mechanic's lien for material sold to and used by the owner, where the value of the property at the time work was abandoned, including the improvements, was less than the amount of the mortgage.

5. SAME—*Costs of Improvements.* The lien of the mortgagee can not be increased, as against such lien holder, by the cost of improvements made by him, which were not contemplated in the original plan.

6. *Mechanic's Lien—Priority Over Mortgage.* The rule announced in *McCrie v. Lumber Co.,* 7 Kan. App. 39, 51 Pac. 966, that a mechanic's lien has priority over a preexisting mortgage, so far as relates to the structure erected, apart from land, is doubted, and held in any event not to be applicable to the present case.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed April 7, 1917. Modified.

*John J. Riling,* and *E. T. Riling,* both of Lawrence, for the appellant.

*M. A. Gorrill,* and *Henry H. Asher,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

MASON, J.: This action involves the priority of liens upon two city lots, described as lots 7 and 8 in block 9 in an addition to Lawrence. The claim of the plaintiff, the Logan-Moore Lumber Company, to a mechanic's lien, was sustained, but it was made subordinate to a lien given to J. D. Bowersock for a loan made to Louis C. Brown to enable him to improve the property by building two houses upon it, and for the expenses of completing the buildings after Brown had abandoned the work. The plaintiff appeals from the judgment upon the ground that it was entitled to a prior lien. The facts are the same with respect to each of the lots, except as

to the amounts, and for simplicity of statement the matter will for the present be treated as though but one of them (lot 7) were involved. The facts as found by the trial court are challenged in but two particulars, which will be mentioned later.

The lot originally belonged to Bowersock's wife, who contracted to sell it to Brown for $600. At the same time, and as a part of the same transaction, it was arranged that Bowersock was to make a loan to Brown of $2000, for which the lot was to be security, and which was to be used in erecting a house thereon. Brown paid $300 down, and on May 17, 1915, Mrs. Bowersock executed to him a contract by which she acknowledged this payment and agreed to deed him the lot upon his paying $2300 additional—$300 in ninety days, $500 in one year and $1500 in two years, the $300 being for the balance of the agreed purchase price, and the remaining $2000 representing the money to be lent to Brown, the legal title being thus retained by her as security for the repayment of the loan to her husband, as well as for the payment to herself of the balance of the purchase price. It was agreed that the money constituting the loan was to be turned over by Bowersock in installments as the work upon the building progressed (the first one, for example, of $600, to be made upon the completion of the foundation), and Brown was required to show in each instance that all liens for labor and material had been waived before he was entitled to receive the money. Brown entered upon the construction of the building, and Bowersock at different times made payments to him, amounting in the aggregate to $1600. These payments were made by Bowersock upon the faith of documents shown him by Brown, which were signed by laborers and materialmen, including the plaintiff, releasing their right of lien in favor of any one making a loan on the property, and agreeing that such a mortgage should have priority over any claim on their part; a statement was added (which was in fact untrue) that the owner had paid up in full to that time for the construction of the house. At this stage of affairs, on June 12, 1915, Brown abandoned the work and left the community. The plaintiff had at this time furnished material to the amount of $537, for which it was entitled to a lien, which was afterwards per-

fected. All of its claim, however, excepting $37.28, had ac-
crued prior to its signing of the last statement with regard to
the waiver of a lien. The improvements on the lot at this time
were worth about $800, and the building being incomplete was
exposed to the weather and if left in that condition would
have been subject to rapid deterioration. Bowersock caused
the building to be completed according to the original plans
(except for changes which made a net addition of $140 to the
cost) at an expenditure of $2275.80.

The facts with respect to the other lot are the same, except
that the amount loaned upon it by Bowersock was $1100, the
value of the improvements at the time Brown abandoned work
was $500, and the amount spent in completing the work was
$2385.50.

The lien allowed Bowersock on the entire property was
$7662.39, which included some expenditures for sidewalks and
small items in finishing the buildings outside of the original
plans.

The lien of Mrs. Bowersock for the unpaid part of the pur-
chase price was made subsequent to those of her husband and
the plaintiff.

The material part of the documents referred to as waivers
of liens reads as follows:

"Now therefore, in consideration of $1.00, cash, in hand paid to us,
and each of us, by the owner, we, the undersigned, do hereby release
all our right of lien on the above described property that we have, or
may have on account of labor performed or material furnished, or that
was caused to be furnished by or through us, that is now used and in
position in said house, in favor of any private individual, bank, or Loan
Association that has made a loan on said property, or that may make a
loan on the same, and that said mortgagee shall have priority over any
claim that either of us may have on account of labor performed or
material furnished that is now used, and in position in said house, on
lot heretofore described. And we further state that the owner has paid
up in full, as per his agreement, to this date, for the construction of
said house."

1. The plaintiff suggests that Bowersock could not have
been misled by such a statement, purporting to be based on
payments made by the *"owner,"* because his wife was the
owner of the property, and he, as her agent, must have known
what she had paid. The word "owner," however, as used in
the writing, obviously referred to Brown, and such a descrip-

tion of him was both natural and proper. Although the cross-petition of Bowersock alleges that his wife was still the owner of the two lots, the specific facts set out showed that she had delivered possession to Brown under a contract that he was to have a deed when he completed the payment of the agreed amount. In that situation Brown was the real or equitable owner and Mrs. Bowersock merely had a lien for which she held the legal title as security. (*Courtney v. Woodworth,* 9 Kan. 443.)

2. The plaintiff contends that the waiver of a mechanic's lien did not protect Bowersock, because it was expressly made in favor of a mortgagee, and he had no mortgage on the property. If, as the court found, it was agreed between the three parties that Mrs. Bowersock should hold the legal title as security not only for the part of the purchase price due to her, but also for the money loaned by her husband to Brown, then Bowersock did have a mortgage, the holding of the legal title by his wife as security for the money due him making him in effect a mortgagee. But the plaintiff insists that neither the pleadings nor the evidence warranted that finding. It is true that the cross-petition filed by the Bowersocks jointly did not say in so many words that Mrs. Bowersock was to hold the legal title as security for the loan made to Brown by her husband, but it contained a paragraph reading as follows:

"Defendants further allege that it was understood and agreed between the defendant L. C. Brown and defendant J. D. Bowersock that contract marked Exhibit 'A' [the contract by which Mrs. Bowersock agreed to make Brown a deed upon his paying her $2300], and application marked Exhibit 'B,' above referred to, [Brown's application to Bowersock for a loan], should be treated and considered as a part of one and the same transaction. That while the amount of the purchase price stated in contract, Exhibit 'A,' is $2,600.00, it was and is, in truth and fact, to be only $600.00, $300.00 of which was paid in cash at or before the time of the execution of said written contract and the balance of $300.00 to be paid within ninety days from the date thereof."

The fair inference from these allegations is that the $2000 was added to the amount of the purchase price to represent the loan to be made by Bowersock to Brown, and that the holding of the title by Mrs. Bowersock after the receipt of the $300 due her was for the benefit of her husband. The evidence on this point was not as explicit as it might have been,

but we regard the finding referred to as justified by the following questions and answers from the examination of Bowersock:

"Q. I hand you the two contracts relative to those lots; you will observe there that the consideration stated, or the amount to be paid is $2,600.00. Tell the court why that was $2,600.00 instead of $600.00; for what purpose that was inserted there? . . . A. Because it had been arranged that I would advance him $2,000.00 as the buildings progressed.

"Q. What security were you to have for this advancement? . . . A. I had this property.

"Q. Providing what? A. Providing that he did n't get a deed until he paid for it."

The sufficiency of the cross-petition is challenged on the ground that the verification in behalf of Mrs. Bowersock is defective in not showing the grounds upon which it was made by her husband as her agent. It recited that the facts were within his personal knowledge, which is all that the statute requires when that condition exists. (Civ. Code, § 116; *Gibson v. Shorb,* 7 Kan. App. 732, 52 Pac. 579.)

3. Inasmuch as the plaintiff signed a writing consenting that any lien for material furnished that might be asserted on its part should be inferior to that of any one who should lend money to Brown upon the security of a mortgage on the property, and Bowersock made his loan in reliance upon such consent, the plaintiff is in no position to assert a lien to the disadvantage of Bowersock, whether the ownership of the property is conceived as being in Brown or Mrs. Bowersock. Moreover, that matter is rendered immaterial by the fact that the court made the plaintiff's lien paramount to the interest of Mrs. Bowersock. Merely as an explanation of the plaintiff's course, it may be said that the reply contained a statement that its signature to the waivers had been procured by fraud on the part of Brown in misrepresenting its contents, but as it is not suggested that Bowersock had any knowledge of this, the legal rights of the parties to the present controversy are not affected by it. Moreover, the plaintiff was necessarily negligent in signing a statement that the bills for material had been paid when the fact was otherwise, and doubtless Bowersock would have been protected as to money loaned on the property in reliance upon such statement, even in the absence of an express waiver. These considerations require the approval of

the decision giving Bowersock's lien for the money he advanced to Brown (amounting on both properties to $2700) priority over the plaintiff's claim.

4. The question as to the lien awarded to Bowersock for the money expended in completing the buildings according to the original plans stands upon a different footing. As Brown had abandoned the property with the buildings incomplete and in such condition as to deteriorate rapidly unless something were done to preserve them, it was natural and proper that Bowersock should assume control and take steps to that end. It can not be said that his possession so taken was acquired under such circumstances that he ought not in equity to be permitted to retain it, and therefore he was entitled to the privileges of a "mortgagee in possession." (*Stouffer v. Harlan,* 68 Kan. 135, 146, 74 Pac. 610.) As against the owner, Brown, he was entitled to make expenditures for such improvements as were reasonably necessary for the upkeep of the property—to prevent deterioration—and to add the cost to the amount of his lien. (27 Cyc. 1265.) And Brown would hardly have been in a situation to object to this principle being so applied as to cover the finishing of the work which he had begun. A difference must be recognized, however, between the position of the owner, who is necessarily benefited by any increase in the value of the property, and who is under an obligation to the mortgagee to prevent waste, and that of a lien holder, who might or might not be benefited, according to circumstances, and who has made no contract with the mortgagee, and owes him no duty. Here, before Bowersock began work upon the completion of the buildings, he had a first lien for $2700. The two lots, with the improvements, were worth but $2500. The plaintiff's second lien was therefore practically worthless as things stood. The only reasonable prospect of its realizing anything upon its claim was through the investment by someone of enough more money to give added value to what had already been done. The mere covering in of the incomplete buildings so as to protect them from the weather would not have accomplished this, nor have appreciably bettered the plaintiff's condition. The natural and reasonable method of increasing the value of the partially constructed buildings was to complete them according to the original design. Under the

peculiar circumstances presented we think the trial court was justified in giving Bowersock a first lien for the money expended in this way.

5. But the character and extent of the improvements to be made could not fairly be left merely to the judgment or taste of the mortgagee making them, but must be subject to some definite limitation. And the only practical limit that suggests itself is that resulting from conformity to the original plans. A net addition of $140 was made to the cost by changes in these plans, and the mortgagee was given a first lien for expenditures outside of the completion of the buildings, amounting to $211.39. We conclude that the plaintiff's lien should have precedence over the part of the mortgagee's claim based on these expenditures.

6. The plaintiff invokes a decision of the court of appeals holding that a mechanic's lien upon the improvements, as distinguished from the lots on which they are placed, has priority over a preëxisting mortgage. (*McCrie v. Lumber Co.*, 7 Kan. App. 39, 51 Pac. 966.) The interpretation there given to the statute seems out of harmony with expressions of this and other courts. (*Martsolf v. Barnwell*, 15 Kan. 612; *Basham v. Goodholm & Sparrow Inv. Co.* [Okla.], 152 Pac. 416.) Moreover, the doctrine of that case, if sound, would not avail the plaintiff here, since it was given a lien prior to that of Mrs. Bowersock, and the waiver which it signed must be construed to refer to its lien upon the buildings as well as upon the bare lots.

The judgment is modified by giving the plaintiff's lien precedence over $351.39 of the mortgagee's claim, and as so modified is affirmed.