## ROBERT McCRIE v. THE HIXON LUMBER COMPANY et al.

### No. 280.

1. PRACTICE—*Insufficient Instruction.* In a civil action, that the court's instructions do not cover every contention in or aspect of the case, is not error requiring a reversal. If the instructions are not sufficiently comprehensive to meet the views of counsel, they should call the attention of the trial court thereto by a request for additional instructions.

2. HOMESTEAD—*Actual Occupation Necessary.* Actual occupation is essential to the establishment of a homestead in land, under the constitution and statutes of this state.

3. MECHANICS' LIENS— *On Improvements Only*, *When.* Under the provisions of section 630 of the code (Gen. Stat. 1889, ¶ 4733 , in relation to mechanics' liens in cases where there are prior liens upon the land, the mechanics and material-men are entitled to priority on a new structure erected entirely by them and from their material, independent of the land itself.

Error from Atchison District Court; W. D. WEBB, judge. Opinion filed January 27, 1898. Modified.

THIS was an action to foreclose certain liens obtained under the mechanics' lien law. The plaintiff in error, and others who were defendants below, set up judgments against the property owners, and showed that the judgments were rendered before the contract for the house was made. The mechanics and material-men sought to have their liens declared prior to the judgment liens by showing that the real estate was the homestead of the owners. Judgment was rendered giving the mechanics and material-men liens prior to the judgment creditors, and ordering that the surplus, after paying them, be turned over to the judgment creditors. The judgment creditor McCrie brings the case here.

J. T. Allensworth, for plaintiff in error.

Chas. J. Conlon, and J. F. Tufts, for defendants in error.

The opinion of the court was delivered by

MAHAN, P. J. : The principal question in this case, going to the merits, and presented by counsel in their briefs and arguments, is whether the property involved in the suit was exempt to the principal defendants — the Hudsons — as a homestead.

The defendants in error contend that the court ought not to consider the merits of the case because the record is insufficient; that the case made is indefinite, incomplete, and does not purport to be the record or copies of records of anything upon which this court can base a review. Counsel are mistaken in this. The record contains the pleadings and the special findings

McCrie v. Lumber Co.

of the jury, the findings of fact of the court, and the conclusions of law based thereon. It would have been an unnecessary expense to have brought to this court the evidence. The practice of limiting the case made to sufficient matter to present the questions involved ought to be encouraged rather than discouraged.

The first specification of error is that the court erred in omitting to instruct the jury as to what constituted a homestead. If the instructions were deficient in any respect it was the duty of counsel to ask the court to give further instructions. Had he done so, and had the court refused to submit the proper instruction to the jury upon the question proposed, there would have been something to base the contention upon. As it is, there is not.

1. Instructions insufficient, others should be asked.

The second specification of error is that the court erred in concluding that the mechanics' liens were prior to the judgment liens of the plaintiff in error, and in adjudging that the proceeds of the sale of the property involved, after the mechanics' liens were satisfied, should be distributed among the judgment creditors *pro rata*. This directly involves the question whether the land was a homestead or not, and also presents the question of the respective rights of the judgment lienors. The third specification of error is that the court erred in not adjudging the plaintiff in error to have a first lien upon the property. And the fourth is that the court erred in not sustaining the plaintiff's motion for a new trial.

These three involve the homestead question. If the land was exempt to the principal defendants as a homestead, the plaintiff has nothing to complain of as against the mechanics and material-men whose labor and lumber went into the improvements upon the property.

2. Homestead.

The findings show that the plaintiff in error obtained his judgment in 1890 ; that the principal defendants — the Hudsons — acquired their title to the property in controversy on the 22d day of February, 1892 ; that it was their intention at the time they took title to the property to make it their homestead ; that during the months of March, April, May, and June, 1892, John H. Myers, one of the defendants, was engaged under a contract with them in constructing a dwelling-house upon the land ; that the Hixon Company and the other lienors furnished material therefor and labor thereon as subcontractors ; that the work was abandoned by reason of the fact that the Hudsons failed to make a payment to the contractor according to the terms of the contract ; that at no time did the Hudsons or any of them ever reside upon the land ; that during all of the time that the work was progressing they lived in rented property about a mile distant from the property in controversy ; and that after the suspension of the work on the property they left Atchison and moved to the town of Alton, in Kansas, and have resided there ever since.

The action was tried at the March term, 1894. After adjudging the several amounts due to the lienors against the Hudsons, as well as against Myers, the contractor, the court held that those lienors should be first paid out of the proceeds of the property ; and if there should be any residue after paying them, it should be distributed among the judgment creditors *pro rata;* that the Hudsons were not entitled to hold the proceeds of the sale against the judgment creditors after the mechanics' liens were satisfied. So it will be seen the court not only held, in effect, that as between the parties claiming liens for work and the material furnished in the construction of the house

and the judgment·lienors the property was exempt
as a homestead of the Hudsons, because it could not
have found that the liens of the mechanics and mate-
rial-men were superior to the liens of the judgment
creditors under any other theory ; but it also held, as
between the Hudsons and their judgment creditors,
that the property was not exempt; otherwise, the
residue of the funds, after discharging the other liens,
should have been paid to the Hudsons. Under the
well-settled law of this state, the proceeds of a home-
stead sold at a judicial sale remain exempt and can
not be appropriated to the payment of judgment
creditors.

In support of the liens of material-men and mechan-
ics, it is contended that the property is exempt be-
cause it was bought by the Hudsons with the express
intention of making it their home ; because they pro-
ceeded to prepare it for a home by the erection of
buildings thereon ; and because the jury found that,
at the time of the trial, the Hudsons had not aban-
doned their intention of making the property their
home, notwithstanding it had never been occupied as
a home by them. Had the Hudsons ever perfected
their homestead right by an actual occupation of the
property, this contention might be sustained, under
the authority of cases in our supreme court.

In the case of *Ingels v. Ingels*, 50 Kan. 755, the su-
preme court says :

" Where city lots are purchased for a homestead, in
order to preserve a debtor's right to the homestead
exemption he must actually occupy the same as a
residence within a reasonable time after the purchase,
and where a debtor fails to so occupy, and fails to
make any preparation for occupancy for a period of
two years and five months after such purchase, he
cannot defeat the judgment lien of a creditor merely

by showing that he has always intended to occupy said lots as a homestead. The constitution and statute require actual occupancy in order to preserve a homestead right. Occupancy after levy of execution does not change the rights of the parties.''

While it is true in this case that there was preparation made by the parties for occupying the property within two years, or within a few months after the purchase, yet they never occupied it at any time.

In the case of *Gilworth v. Cody*, 21 Kan. 702, cited by counsel for defendant as sustaining their view that the property was exempt by reason of these preparations having been made, the court, in reciting the facts, says that Cody purchased the property in controversy in that case on the 1st of December, 1877; that he at once began to dig a cellar and haul stone for a dwelling-house thereon; that on the 5th of December, 1877, he started to a neighboring town to purchase material to erect a dwelling-house, and returned with the materials on the 7th, and continued the construction of the house and completed it on the 28th of December, 1877; that an attachment was levied between the 7th and 28th; that on the completion of the house he at once moved his family into the dwelling, and has since occupied the dwelling by himself and family. Under these facts, the court held that the property was exempt; that occupancy as a homestead was initiated at the time of the levy of the attachment by the fact of the presence of the defendant at work upon his dwelling-house, which was completed by his actual occupancy within twenty-eight days from the purchase of the land. Had the Hudsons in this case occupied the property at all before the commencement of this suit there would be some reasonable ground for the contention.

McCrie v. Lumber Co.

Counsel for defendants also refer us to the case of *Edwards v. Fry*, 9 Kan.·425. In that case the supreme court held that the ten acres of land, the subject-matter of the suit, had never become a part of the homestead because it had never been occupied as such. The ten acres in controversy were a part of the entire tract of forty acres, but were separated from the other thirty acres by a railroad right of way. When Edwards bought the land he intended to make the entire tract his homestead. He had no other land. But the ten-acre tract was in the possession of Fry, who claimed a verbal contract from Edwards for the purchase thereof. The contention was that, inasmuch as it was the homestead, or a part of the homestead, Edwards could not make a verbal contract of sale without the wife's consent. But the court held that, inasmuch as the possession of Edwards did not extend to the ten acres, inasmuch as he never had occupied the ten acres as a homestead, the verbal contract for a sale could be enforced against him. BREWER, J., in the course of the opinion, says : " A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, may secure, *ab initio*, a homestead inviolability. Yet occupation is nevertheless an essential element to secure this inviolability."

Under the findings of the jury and of the court, it cannot be said, in the light of the decisions of the supreme court in construing the homestead law, that this tract ever became the homestead of the Hudsons. If it was not the homestead of the Hudsons, the judgment lien of the plaintiff in error attached thereto as soon as the Hudsons acquired title. This was a month or more before the contract was made with Myers under which the lumber was furnished, and before the work was performed for which the mechanics' liens are claimed.

If these judgments were liens at all, they were, as to the land, prior to those created by Hudson under the Myers contract. The court's conclusion of law to the contrary was erroneous and contrary to the findings of fact.

The remaining question is whether the liens attached to the building erected by Myers under the contract with the Hudsons, apart from the land. Was it intended by the legislature to give to the mechanics and material-men liens upon the building erected by them independent of the land itself? We are of the opinion that the statute is broad enough to evidence such an intention. The statute (Gen. Stat. 1889, ¶ 4733) says: "Such liens shall be preferred to all other liens or incumbrances which may attach to or upon such land, buildings, or improvements, or either of them, subsequent to the commencement of such building."

3. Mechanic's lien prior on building.

The words "either of them" are sufficient to indicate that the legislature intended a lien to attach to the buildings independent of the land itself. This construction has been placed by other states upon similar statutes. In some of the states the details by which this separate lien is worked out are more specific in the legislative enactment, but such intention is no more clearly expressed. And we conclude that under the provisions of this statute the material-men and mechanics had a prior lien upon the building erected by them. It can be worked out either through a finding of the court as to the respective values or separate appraisement of the buildings and land, under the direction of the court, and an award of the amount *pro rata* to each lien-holder from the proceeds of a sale *in solido*. While the judgment liens attached to the land prior to the commencement of

the building, they did not attach to the building until after the liens of the mechanics attached thereto under the express provisions of the statute.

The judgment will be modified so that it will give to the plaintiff in error a first lien and to Helen T. Cheever a second lien upon the land for the amount of their respective judgments remaining unpaid; and to the mechanics and material-men a first lien upon the building; and the district court will ascertain and determine, from proofs to be offered by the respective parties, the value of the land, and the value of the building erected under the Myers contract, separately, and direct a sale of the property *in solido*, and distribute the proceeds to the respective parties *pro rata* according to such valuation.

The costs in this court will be divided between the parties.