## CULMER PAINT & GLASS COMPANY v. GLEASON et al.

### No. 2373.   Decided January 31, 1913 (130 Pac. 66).

1. MECHANICS' LIENS—FORECLOSURE—AMOUNT OF INCUMBRANCE—EVIDENCE—WEIGHT. In an action to foreclose a mechanic's lien, evidence *held* to show that the mortgagee, under a mortgage for $12,390, given for the purpose of raising funds to construct the building involved, advanced only $10,407.60 thereunder. (Page 347.)

2. MORTGAGES—MECHANICS' LIENS—PRIORITY. While a mortgagee, under a mortgage given for the purpose of raising funds to construct a building, has a lien prior to that of a subcontractor performing labor and furnishing materials for such building, such lien extends only to the amount actually advanced on the mortgage. (Page 349.)

3. MORTGAGES—MECHANICS' LIENS—PRIORITY. Where mortgages and the secured notes and bonds were made payable to a trust company, it was not a purchaser thereof; and hence was entitled to enforce its lien, as against a subcontractor furnishing materials and labor for the improvement of the property, only for the amount advanced, and not for the face value of the mortgages. (Page 350.)

4. USURY—EVIDENCE—SUFFICIENCY. Under Comp. Laws 1907, section 1241x3, providing that all bonds, mortgages, etc., whereupon or whereby there shall be reserved or taken or secured, or agreed to be reserved or taken, any greater interest than that prescribed by statute, shall be void, and section 1241x8, pro-

viding that when it satisfactorily appears that any such instrument is usurious the court must declare it void and order it delivered up and canceled, the court could not declare a mortgage void where, if interest was computed by one method, there was no usury, although, if computed by another method, there was usury, since forfeitures will be enforced only when the proof is clear and convincing.   (Page 351.)

Appeal from District Court, Third District; *Hon. T. D. Lewis*, Judge.

Action by Culmer Paint & Glass Company against John T. Gleason and others.

Judgment for plaintiff.   Defendant, P. W. Gorman, appeals.

Reversed and remanded with directions.

*E. A. Walton, M. E. Wilson* and *Goodwin & Van Pelt* for appellant.

*Edward McGurrin* and *Snyder & Snyder* for respondent, Salt Lake Security & Trust Company.

FRICK, J.

The Culmer Paint & Glass Company commenced this action against John T. Gleason and Adell Gleason, as owners of certain real estate, which is described, and against one O. M. Engdahl, as contractor, to foreclose a mechanic's lien. The appellant, P. W. Gorman, and the Salt Lake Security & Trust Company, hereinafter called trust company, were also made parties; the former claiming a mechanic's lien, and the latter claiming a lien as mortgagee, upon the real estate aforesaid.   There were also other parties to the action; but all of those, as well as the Culmer Paint & Glass Company and the Gleasons, have either been dismissed from or have abandoned the case.   Both Mr. Gorman and the trust company filed cross-complaints, in which they set up their respective liens; and the whole controversy on this appeal is between those two claimants.

The district court, in substance, found that on the 12th day of May, 1910, the Gleasons entered into a contract with O. M. Engdahl, wherein said Engdahl agreed to construct and complete a certain building for said Gleasons upon certain real estate, duly described, for the sum of $12,390, which building was duly erected; that thereafter P. W. Gorman entered into a contract with Contractor Engdahl, wherein said Gorman agreed to furnish the material and perform the necessary labor to complete the plumbing, and to install a steam heating plant in said building, for the sum of $1400, which Engdahl agreed to pay Gorman for said material and labor; that said Gorman fully performed his said contract and completed the plumbing and installed the heating plant in said building, but received only the sum of $500, to be applied on the contract price, leaving a balance due him of $900; that Gorman had complied with all the provisions of our statute relating to mechanics' liens, and was entitled to a mechanic's lien on the building and real estate on which it stands; that Gorman also was entitled to $6.30 costs for filing his lien and twenty-five dollars as an attorney's fee for foreclosing the same, under the statute; that on the 21st day of April, 1910, said Gleasons "made, executed, and delivered to the Salt Lake Security & Trust Company" their two certain mortgages, one for $8000 and the other for $4390, both of which were duly recorded, and were liens on the real estate on which the building was erected, as aforesaid.

As conclusions of law, the court found that Gorman was entitled to a lien for the amounts found due him, as aforesaid, on the building and real estate; that the trust company also was entitled to a lien for the amount of its mortgages, to wit, $12,390; and that said mortgage liens were prior and superior to Mr. Gorman's lien.

A judgment or decree of foreclosure of appellant's lien was entered in accordance with said findings and conclusions of law. Mr. Gorman alone appeals. He assails both the findings of fact and conclusions of law.

Counsel for appellant contend that there is no evidence to support the finding that the trust company is entitled to a prior lien for the sum of $12,390 as against Gorman, nor that the contract price for the construction of the building was that amount. They insist that the evidence is undisputed that the contract price for the construction of the building was $9250 and no more. Further, that the evidence shows that the trust company, and not Engdahl, was the real contractor. We remark that the evidence does not sustain the last contention.

While it is true that the nominal contract price for the construction of the building was $12,390, yet the undisputed evidence is to the effect that the actual amount to be paid the contractor was $9250, and that only that sum was actually paid to him for the construction and completion of said building. The evidence, therefore, does not sustain the finding that the contract price to construct and complete the building was $12,390. Nor can the finding or conclusion, as against Gorman, be sustained that the trust company had a prior lien on the building and lot on which it stands for the sum of $12,390. With regard to what the actual amount was that was advanced by the trust company, the testimony of the president of said company leaves no room for doubt. His testimony, as set forth in the printed abstract, and which is not disputed by anyone, is as follows:

"Exhibit G is a transcript of our ledger account of O. M. Engdahl. Exhibit F is a true and correct transcript of the Gleason account. In the fourth line the entry of A. H. Birrell, $590, is one of the disbursements on account of the purchase price of this bond and mortgage. My understanding is that the next item is for the services of Mr. Cahoon. The item of $2210 is the difference between the price at which we purchased these bonds and mortgages and their face. I would like to say that $250 should come out of that, making a net amount of $1960. That item is the difference between what we paid for the bond and its face. We purchased these bonds and mortgages at eighty-four per cent.

of their face, and this represents the difference between that eighty-four per cent. and the face value. · We purchased from Mr. Birrell."

Eighty-four per cent. of $12,390 amounts to the sum of $10,407.60. The president's testimony, to our minds, is corroborated by the amounts that the trust company claims were actually paid out for the construction of the building. The amount paid to Contractor Engdahl, as shown by the vouchers, is $9263.70, or $13.70 more than the contract price; and the amount paid to the architect is $706.10. These two items amount to $996.80, or $437.80 less than the eighty-four per cent. advanced on the mortgages. There is evidence to the effect, however, that out of the $437.80 there were various sums paid for other purposes, so that it is probable that the trust company did in fact advance upon the mortgages the full eighty-four per cent. of the $12,390, the face value thereof. While the evidence is not as clear upon the latter point as it might be, yet we think the evidence clearly supports a finding that the eighty-four per cent. was in fact advanced for the benefit of the Gleasons. There is therefore a discrepancy between the amount stated in the mortgages and the amount advanced on them, amounting to $1982.40. The president of the trust company, in his testimony, admitted this discrepancy to be $1960. He, however, claims that various amounts were paid out as commissions. For example, there is one item of $2210, of which the president claims the $1960 is a part, which he said was paid as a commission to Mr. Birrell. Mr. Gleason, however, testified that he knew nothing about commissions, "except the architect's fee." Again, it is not easy to perceive how the trust company could pay a commission of either $2210 or $1960 out of $437.80, the amount remaining of the eighty-four per cent., after the contractor and the architect were paid. There is therefore nothing upon which the trust company can base its claim for the $1982.40, except we say, as the district court found, that the contract price for the construction of the building was $12,390. Such a finding, however, cannot be sustained, for the reason that the con-

tractor positively states that his contract for the construction of the building was for only $9250, and the vouchers introduced in evidence show that he was paid $9263.70, or only $13.70 in excess of the contract price. There is no claim that he was paid for extras, unless the $13.70 represented extras. The only theory upon which the trust company's claim can be sustained would be that it entered into a contract to construct the building for the sum of $12,390, and then had sublet the construction thereof to Engdahl for the sum of $9250, and that the difference between the two amounts constituted profits upon the contract belonging to the trust company. This theory, however, fails, because the trust company positively denied that it had entered into the contract with the Gleasons to construct the building, and that it was the original contractor. We have already said that the record would not support a finding that the trust company was the contractor. There is therefore no basis for the trust company's claim to the surplus of $1982.40 as against Mr. Gorman's lien.

The Gleasons are not here complaining, but Mr. Gorman does complain, and, as against him, the trust company cannot recover more than it has advanced to the Gleasons, and, under the undisputed evidence in this case, no more than $10,407.60. Moreover, it is clear from the evidence that the mortgages were given to the trust company for the express purpose of raising funds to construct the building. The trust company apparently retained the money in its possession as mortgagee, and paid it out from time to time upon vouchers issued by the contractor. In this case, therefore, the material furnished and the labor performed by Gorman and the money advanced by the trust company were intended and used for the same purpose, namely, the construction of the building upon the real property owned by the Gleasons, and upon which the mortgages were given as a first lien. The equities, as between the trust company and Gorman, were therefore entirely equal in time; and were it not for our statute, which gives the mortgagee the preference, they would be equal in right. The

statute, however, does not permit the mortgagee to claim
a lien for more than he has advanced to the mortgagor, as
against any other lien claimant.  Equity and good con-
science both forbid the enforcement of such a claim, espe-
cially as against another lien claimant who has furnished
material and performed labor upon the building, and has
thus enhanced the value of the mortgaged property.  The
real estate upon which the building is erected, and which
is necessary for the use thereof, together with said building,
constitute a fund out of which the lien claimants, including
the mortgagee, are to be paid.  The fact that the mortgagee
is given priority under our statute does not permit him to
reduce the fund by fictitious claims; but his claims must be
limited, at least as against other *bona fide* lien claimants,
to the amount he has actually advanced on the mortgage
which he claims to be a first lien.

Nor is the claim advanced by the president of the trust
company permissible that said company purchased the notes
and bonds secured by the mortgages at less than the face
value thereof, namely, for eighty-four per cent. of that value.
The notes and bonds, as well as the mortgages, are all made
payable to the trust company or its order.  The notes
and bonds and the mortgages therefore belonged to
the trust company as soon as they were signed and
delivered to it.  Indeed, the court expressly found, as we
have seen, that the notes and mortgages were made, executed,
and delivered to said company.  No one, therefore, could
have owned the paper and then sold it to the trust company
at a discount.  In our judgment, such a claim cannot be
sustained, and is advanced for the purpose of claiming the
$1982.40.

In view of the whole record, we can arrive at no other con-
clusion than this:

That when the Gleasons had expressed a desire to erect a
building on the real estate the matter was by some one (no
matter by whom) submitted to the trust company; that the
company agreed to advance sufficient money to construct the
building, not to exceed the sum of $12,390; that two mort-

gages, one for $8000 and the other for $4390, were at once executed and delivered to the trust company; and that company was to pay out the money as the building progressed, and until it had paid out the aggregate amount specified in the two mortgages, if it required that sum to complete the building. It, however, did not require that sum; and since it did not the trust company did not pay out that sum, and hence cannot claim a lien for that amount, as against other *bona fide* lien claimants.

Counsel for Mr. Gorman vigorously contend that the claim of the trust company is usurious under our statute. After carefully considering all of the facts and circumstances, we, however, entertain a serious doubt with respect to the usury claim. Our statute (Comp. Laws 1907, sec. 1241x3) provides as follows:

"All bonds, bills, notes, assurances, conveyances, mortgages, deeds of trust, all other contracts or securities whatsoever, and all deposits of goods or other things, **4** whatsoever, whereupon or whereby there shall be reserved or taken or secured, or agreed to be reserved or taken, any greater sum or greater value for the loan or forbearance of any money, goods, or other things in action than is above prescribed, shall be void; but this title shall not affect such contracts as have been made previous to the time it shall take effect."

Section 1241x8, in substance, provides that whenever it satisfactorily appears by the admission of the party, or by proof, that any bond, bill, note, assurance, pledge, conveyance, mortgage, deed of trust, contract, security, etc., is usurious, the court must declare the same void and order it delivered up and canceled, and enjoin any prosecution thereon. This is a most drastic statute, since it forfeits the creditor's entire claim. The statute authorizes more than confiscation for public use. It, in effect, permits it for private use, since the debtor seems to be entirely relieved from his obligation to pay, in case usury is established. Courts always abhor forfeitures, and this is especially true of courts of equity. Forfeitures, therefore, especially such

as have the effect of taking property from one and giving it to another, should be enforced only when the proof is clear and convincing, if not beyond a reasonable doubt. Counsel for appellant practically concede that by computing interest upon one method there is, perhaps, no usury, but that, if it be computed upon another, then there is usury in the transaction. This, to say the least, leaves the matter in doubt, and in view of such a doubt we ought not to enforce the forfeiture.

In view of the foregoing conclusions, we need not consider or pass upon the contention made by counsel for the trust company that Mr. Gorman, as a junior incumbrancer, is not in a position to raise the question of usury. Upon that point we express no opinion.

From what has been said, it follows that the findings of fact and conclusion of law, so far as they affect Mr. Gorman, and to the extent that they are in conflict with what we have said, must be vacated and set aside; that the judgment, so far as it affects Mr. Gorman, must be reversed and the cause remanded to the district court, with directions to vacate its findings with respect to the amount found due on the two mortgages of the trust company, and to substitute therefor a finding that there is due on said mortgages, as against Mr. Gorman, the sum of $10,407.60, with interest as stated in the findings; to make conclusions of law that, subject to said sum of $10,407.60, Gorman has a lien on the mortgaged premises for the sum stated in the court's findings; to enter a decree of foreclosure ordering a sale of the mortgaged property and a distribution of the proceeds of the sale as follows: $10,407.60, with accrued interest, to the trust company; $900, with costs, attorney's fee, and interest, to Gorman; and the balance, if any, to the owner of the property. Except as modified above, the findings of fact, conclusions of law, and judgment are affirmed. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.