Cady Lumber Co. v. Miles.

H. F. CADY LUMBER COMPANY, APPELLANT, V. THOMAS H. MILES ET AL., APPELLEES.

FILED MAY 4, 1914. No. 17,761.

1. Mechanics' Liens: MORTGAGES: PRIORITIES. A mechanic's lien for material sold and delivered to an owner for the erection of a dwelling is superior to, and takes precedence over, the lien of a mortgage executed and recorded subsequent to the date when the first part of the material was delivered at the premises where the dwelling was being constructed.

2. ————: ————: ————. The fact that the first load of material was used in the construction of a shack temporarily occupied by the

owner, which was taken down as the work progressed, and was used in completing the dwelling, as was agreed upon between the owner and the materialman, will not affect the question of the priority of the lien over that of a mortgage subsequently executed and recorded.

3. ———: ———: ———. A mortgagee who takes a mortgage on the premises after having notice that a materialman has commenced to furnish the lumber for the erection of the dwelling is not in a position to insist that the lien of his mortgage is superior to that of the materialman.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed as modified.*

*De Bord, Fradenburg & Van Orsdel,* for appellant.

*J. P. Palmer, Crane & Boucher, Parish & Martin, T. E. Brady* and *Alvin F. Johnson,* contra.

BARNES, J.

H. F. Cady Lumber Company, plaintiff, filed its petition in the district court for Douglas county to foreclose a mechanic's lien upon property belonging to Thomas H. Miles and Mary Miles, his wife. The lumber and building material furnished by the plaintiff to the Mileses amounted to $714.45, upon which there remained unpaid $424.45. It was alleged that the first item delivered was on February 8, 1909, and the last item December 3, 1909; that the lien was filed within four months of the furnishing of the material. It was alleged that other parties had furnished material, and claimed to have liens upon the property, which was situated on a lot at the corner of Forty-seventh street and Military avenue in the city of Omaha. Cross-petitions were filed by other lien-holders, and an answer and cross-petition was also filed by the Nebraska Savings & Loan Association, claiming under a mortgage upon which it had elected to declare due the sum of $1,280.50, with interest. Certain replies were filed, but the main issue in the case, and the only one which is brought to this court for determination, relates to the priority between the plaintiff's mechanic's lien and the lien of the mortgage of the Nebraska Savings & Loan As-

sociation. A trial of the case was had in the district court, and resulted in findings and judgment declaring the priority of liens, and in which it was held that the lien of the Nebraska Savings & Loan Association was prior and superior to the mechanic's lien of the H. F. Cady Lumber Company. From that judgment the lumber company has appealed to this court, and we are required to try and determine the question presented without regard to the finding and judgment of the trial court.

The H. F. Cady Lumber Company, to establish the priority of its lien, produced as a witness one John Wilson, who testified as follows: "I am employed by the H. F. Cady Lumber Company, and have been for six years. I was out at the premises involved, and saw the shack which was built there by Miles. He lived in this shack while he was building the main house. He made the cement blocks for his house, and, while making these and building the house, he lived in the shack. The plaintiff furnished the material for the shack as well as the house. The first bill of materials furnished by the plaintiff was delivered for the shack, * * * at the premises, on April 27, 1909, and consisted of 1,000 feet of shiplap, two rolls of tar felt, a lot of 2x4's, a window and a door, total $40.66. The tar paper went into the roof and the shiplap went into the siding of the shack. The 2x4's were used for studding. The window and door were also used in the shack. Later on Miles tore down the shack and used the material in the house. I know that the shiplap which was on the shack was later incorporated in the house, because in the cellar partitions of the house I saw this shiplap, and on it were large-headed nails with parts of tar felt sticking to them, and from this I know that this shiplap with these nails sticking in it came from the roof of the shack, for the roof of the shack was made with shiplap with the tar felt tacked on with these nails with large heads. Miles bought the lumber for the shack at our place. I know that this was the only building that Miles had on hand. Miles told me that he intended to use all of the material that went into the shack in his completion of the main building, and,

before tearing down his shack, he told me he intended to incorporate the materials into the main building."

The plaintiff called as a witness George W. Platner, who testified: "I was formerly with the Cady Lumber Company, as treasurer of that company, but at present am not interested in the company at all, having sold all my interest in it. I know Miles and saw him about ordering of the Cady Lumber Comany the lumber for his job at Forty-seventh and Military avenue. Mr. Miles arranged with me at one time for the purchase of two batches of materials, one for the shack and the other for the house, explaining to me that he would so construct the shack that he could afterwards tear it down and put the material in the house. The Cady Lumber Company furnished the material for the shack, and I know that it went into the construction of the shack. I agreed to sell this lumber to Miles, on the part of the Cady Lumber Company, on the arrangement that he was to get a loan, so that he might pay off the bill. I think I talked with a loan company beforehand, and got word that he was going to secure a loan." The witness further testified that besides the original bill some extras were furnished Miles to complete the house; that "the materials named in the estimate, and the material that went into the shack, and the extras were arranged to be sold to Miles by the Cady Lumber Company at the same time, and on the same day; that is, the material that went into the shack and that which went into the house were furnished under one contract, made at one time. Miles ordered that the material should be sent up to the premises, as he would require it in the shack and the house. I think I had assurance that the loan would be made to Miles before we furnished him any of the materials. I remember, when Miles asked us to deliver it up there, that he explained to me what he was going to do—that he was going to build this shack to live in, and afterwards use it in the house, before the house was completed. I thought that was an economical move on his part. I believe he told me at that time that he was paying rent, and wanted to get rid of the question of

rent, or that he had sold his other place, or something had forced him to have a place for shelter temporarily until he got his building further along." Witness further testified: "Before we delivered any of the material for the shack, the lumber company was obligated to deliver to Miles all the material which finally went into the permanent building."

Plaintiff also called as a witness F. A. Ewing, who is secretary and treasurer of the lumber company. He testified that he "was not with the Cady Lumber Company when the Miles bill was sold; that he had talked with Miles after the material had all been furnished, and Miles made no question about the amount of the bill; that Miles told me that all the lumber named in the lien had been received; and that the material that he got for the shack came from the Cady Lumber Company; and that this material later went into the house; that the full amount of the lien, $424.45, remained unpaid."

It was stipulated that the mortgage of Mary Miles and Thomas H. Miles to the Nebraska Savings & Loan Association was executed by them on the date mentioned in the mortgage; that the mortgage was filed on June 21, 1909, and recorded in the register of deeds office in Douglas county; that the bond for $1,250, dated June 19, 1909, likewise executed by Miles and his wife, is the bond mentioned in the mortgage.

The building association then called one J. R. Brandt as a witness. He identified the mortgage and bond, and gave its date as June 19, 1909; that the shack was built on the lot next to and east of the one described in the mortgage and mechanic's lien; the foundation was of cement, having cement floor; that before the mortgage was taken or recorded he did not examine the property to see whether the materials had been placed thereon by the lienors. Witness never talked to Platner about making a loan to Miles. Witness said: "He thought the lot was 22 feet wide, and that the house was between 20½ to 22 feet wide; that Miles and his wife lived in the shack while the house was being built. There was no other house on

the lot next east except the shack. He understood that the shack was put there just temporarily, but did not ask Miles where he had got his lumber to build the shack with, but Miles told him he had built a shack out there, and that the Cady Lumber Company had extended him a credit of $40 to build the shack with." Witness asked Miles "if he had paid Cady, and he said he had paid them for the material for the shack, all but $10. This was before they put their loan upon the property, and, before they gave him the loan, Miles told him that he had built the shack out there and had gotten the lumber for it from the Cady Lumber Company. The shack was as much as two feet east of the permanent house."

The association then produced Thomas J. Fitzmorris as a witness, who belonged to the real estate committee to put valuations upon property for loans which had been asked of the company. He testified: "When I went out to look at the property, I went into a little shanty that was located just to the east of the house. I didn't look particularly to see whether there was any lumber on the lot. I think I would have seen it if it had been there. I think the shanty must have been two or three feet east from the house. The Miles family were then living in the shanty. I examined it probably between the 12th and 15th. When I was out there to look over the property, the excavation had been made for the house, and half of the cellar floor was built for the main house, and half the basement walls were up. I at that time paid no attention to the lines of the lot."

The following stipulation was also entered into: "It is admitted that Mrs. Mary Miles, who was the owner of the property, authorized her husband, Thomas H. Miles, to build a house, buy material for the house for the purpose of building it, and to charge her property with it, and this stipulation applies to the lien of the H. F. Cady Lumber Company, and to all the other liens."

It also appears that the lumber for the shanty was delivered on the premises on the 27th day of April, 1909; that the lumber to build the main house was delivered on

the premises, commencing on the 22d day of June, 1909, and from time to time until the following December, when the house was completed.

We have thus set forth a greater part of the evidence for the reason that our conclusion in regard to the priority of the liens in question does not coincide with the judgment of the district court. As we view the evidence, it establishes the fact that the delivery of material by the plaintiff on the 27th day of April, 1909, at the premises in question, was material for the construction of the house, and the fact that it was used temporarily in the shack to shelter the Miles family at the time when they commenced building the house, did not make it a delivery for the construction of any other building. The delivery by the plaintiff of other and additional material from time to time until the building was completed gave it a lien which attached on the date of the first delivery. It further appears that the Nebraska Savings & Loan Association had notice that some one was furnishing material for the construction of the house before it took its mortgage, and therefore its lien should be held subject to the lien of the materialman. The mechanics' lien law has always been liberally construed with a view of making it effective. *Foster v. Dohle,* 17 Neb. 631; *Irish v. Pheby,* 28 Neb. 231; *Marrener v. Paxton,* 17 Neb. 634; *Watkins & Co. v. Kobiela,* 84 Neb. 422.

It follows that the judgment of the district court should be, and is, modified to the extent of subjecting the lien of the Nebraska Savings & Loan Association's mortgage to the lien of the H. F. Cady Lumber Company, and the cause is remanded to the district court for Douglas county, with directions to modify its judgment in accordance with this opinion.

AFFIRMED AS MODIFIED.

LETTON, FAWCETT and SEDGWICK, JJ., not sitting.