# BASHAM *et al.* v. GOODHOLM & SPARROW INV. CO.

No. 4968.    Opinion Filed September 28, 1915.

Rehearing Denied November 2, 1915.

Second Rehearing Denied November 23, 1915.

(152 Pac. 416.)

1. **MECHANICS' LIENS—Operation and Extent—Statute—Common Law.** The law relating to liens of materialmen and mechanics was not known to the common law and is a creature of the statute, and its operation and extent are prescribed and limited by statute.

2. **MORTGAGES — Property Covered — Subsequent Improvements.** At common law, a mortgage or lien upon land carries with it not only the buildings or improvements thereon at the time, but all subsequent buildings and improvements placed thereon merge into the realty and become subject to the mortgage.

3. **MECHANICS' LIENS—Priority—Time of Attaching.** As a general rule, as against other incumbrances, such as mortgages, etc., a mechanic's and materialman's lien takes precedence according to the time when it attached to the property, being preferred to incumbrances which have attached subsequent to that time, but postponed to incumbrances previously existing.

4. **MORTGAGES — Mechanics' Liens — Priorities — Subsequent Improvements.** Under the laws of this state a mortgage duly executed and recorded takes precedence over a materialman's lien accruing after the recording of such mortgage, even to the extent of attaching to improvements placed upon the mortgaged premises afterwards by the materialman.

5. **SAME.** Chapter 114, Sess. Laws 1911, gives laborers, who perform work in the construction of a building or improvements upon premises, a lien upon such building or improvement so constructed by them, which lien takes precedence over a prior recorded mortgage upon said premises.

6. **SAME.** The mere knowledge of a party who holds a recorded mortgage against certain land that the owner of the land intends to improve same, or the knowledge that the owner is improving said land, will not warrant the subordination of the said mortgage to a materialman's lien filed upon said premises for material furnished in making said improvements.

(Syllabus by Mathews, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by the Goodholm & Sparrow Investment Company against T. J. Basham and others. Judgment for plaintiff, and defendants bring error. Modified and affirmed.

*J. D. Chastain* and *Wright & Blinn*, for plaintiffs in error.

*Burwell, Crockett & Johnson*, for defendant in error.

Opinion by MATHEWS, C. On the 18th day of August, 1911, the defendant in error, which will be herein styled plaintiff, sold and conveyed to one T. J. Basham a large number of blocks of land in the Morrisville addition to Oklahoma City, and at the same time, in part payment for the same, the said Basham executed to plaintiff a mortgage thereon to secure the payment of notes in the aggregate of $250,000, given as part of the purchase price of said blocks, and said mortgage was duly recorded on the same date. Within a very short time thereafter certain materialmen sold and delivered to the said Basham a large amount of lumber and other material for the purpose of erecting certain houses on certain lots and blocks included in the above-mentioned mortgage; also a number of mechanics and laborers were employed in the erection of said buildings. Said materialmen and laborers, who will, for convenience, be herein styled defendants, not having been paid by the said Basham for the said material and labor, in due time filed liens on the said property as the statute provides.

Plaintiff filed suit to foreclose its said mortgage, and made all of the defendants parties thereto, and asked that it be declared a lienholder upon said blocks and improvements

thereon prior and superior to any claims or rights of defendants. All of the defendants in their answers and cross-petitions claimed liens superior to plaintiff's mortgage. The action was tried before the court, who rendered a personal judgment in favor of plaintiff against T. J. Basham, and a further judgment foreclosing the said mortgage made by the said Basham to plaintiff. Personal judgments were also rendered in favor of defendants against the said T. J. Basham, and their liens foreclosed; but said liens were decreed to be junior and inferior to the mortgage lien of plaintiff, and said defendants have appealed to this court.

At the time of the sale and conveyance by plaintiff to the said T. J. Basham of said blocks of land, there were no improvements on the land, and the same were constructed by the said Basham after said sale out of the material purchased from some of the defendants; the other defendants working thereon as mechanics and laborers. The plaintiff was cognizant of the fact that the said Basham, at the time of the purchase of the land, intended to improve it, and also had personal knowledge that he was improving it at the time the same was being done. There is but one question presented in this case for review. The trial court held that the mortgage of plaintiff was a first and prior lien on the land, and also on the improvements erected thereon after the execution of the mortgage, into which improvements the materialmen and laborers had put their material and labor.

Defendants contend that, where there is a recorded mortgage on unimproved land, materialmen and mechanics, who furnish materials and labor in and about the construction of buildings on said land under a contract with the owner of the land, are, under the laws of this state, en-

titled to a first lien on the buildings thus erected thereon by the owner of the land after the recording of the mort-gage. So far as our investigation has led us, we have been unable to find any case where our court has passed upon the question here presented, and no case from our own state has been cited by either party.

It will be noted that the mechanics' and material-men's lien law was not known to common law and is a creature of the statute. *Christy v. Union Oil & Gas Co.*, 28 Okla. 324, 114 Pac. 740. To the same effect is the case of *Keel v. Ingersoll*, 27 Okla. 117, 111 Pac. 214. This de-cision last referred to is based upon an Indian Territory case, but we believe it is in point here, and almost de-cisive of the case at bar. While the statute upon which the decision is based is worded differently, it is in effect practically the same. We quote from this case as follows:

"The right in favor of persons who have performed work in the erection of buildings on land to a lien upon such buildings and land on which the improvements are located to secure payment for the services performed or material furnished was not recognized at common law, and exists only by reason of statutory provisions. Whether such lien may attach to the building separate and apart from the land upon which it is located the rule is not un-form in all the states. In some states the rule prevails that where for any reason the lien cannot attach to the land, it may attach to the building separate and apart therefrom. In other states the lien attaches only to the building, but it appears that in a majority of the states a lien upon the building separate and apart from the land is not recognized. The rule in each state is determned by specific provisions of its statute, or the construction of such statute by the courts of that state. In those states where it is held that the lien may attach to the building separate from the land, although the statute does not specifically so direct, the rule has resulted from con-

struction of provisions in statutes of such states authorizing a sale of the building or improvement separate and apart from the land and a removal of the same from the land by the vendee. The decisions in the following cases are based upon such statutory provisions: *Mahon v. Surerus*, 9 N. D. 57, 81 N. W. 64; *Grand Opera House Co. v. Maguire*, 14 Mont. 558, 37 Pac. 607; *Jossman v. Rice*, 121 Mich. 270, 80 N. W. 25, 80 Am. St. Rep. 493. But the statute controlling in this case contains no provision creating in specific terms a lien upon the improvements separate and apart from the realty, nor does it contain any provision authorizing a foreclosure of the lien upon such improvements separate and apart from the land when for any reason the lien cannot attach to the land, or that authorizes the vendee to remove such improvements after purchase."

At common law, a mortgage or lien upon land carried with it not only the building or improvements erected thereon at the time, but all subsequent buildings, improvements, or repairs thereto merged into the realty and became subject to the mortgage, and this is the law now, except in so far as changed by the statute or agreement of parties. The lien of mechanics and materialmen is purely statutory, and its operation and extent are defined and limited by statute. *Wimberly v. Mayberry,* 94 Ala. 240, 10 South. 157, 14 L. R. A. 305.

In the absence of a statute to the contrary, it may be said that improvements become a part of the realty when placed thereon, and the increased value given thereby, if any, inures to the benefit of an existing mortgage. Rockel on Mechanics' Liens, page 162. 27 Cyc. page 236, lays down the rule as to the priority of recorded mortgages and mechanics' liens as follows:

"Where the property is subject to a mortgage at the time of the accrual of a mechanics' lien, such mortgage

retains its priority, and the mechanics' lien is postponed thereto, notwithstanding the fact that the value of the mortgage security is increased by the labor or material of the mechanic's lien claimant, or that the building is so changed that very little of the original structure remains. The fact that the improvements for which the lien is claimed were contemplated by the mortgagor prior to the execution of the mortgage does not give the lien priority where the improvements were not contracted for until after the mortgage was executed. Neither does the knowledge of the mortgagee that the mortgagor intends to build upon the mortgaged property or the fact that the money to secure which the mortgage was given was lent for the purpose of improving the property, and under a previous contract that it should be so used, render the mortgage subordinate to a mechanic's lien subsequently arising."

To the same effect is 20 Am. & Eng. Enc. of Law, page 479:

"It is well established as a general rule that, as against other incumbrances, such as mortgages, deeds of trust, judgments, executions, etc., a mechanic's lien takes precedence according to the time when it attached to the property, being preferred to all other incumbrances which have attached subsequent to that time, but postponed to incumbrances previously existing."

The defendants have cited only the case of *McCrie v. Hixon Lumber Co.*, 7 Kan. App. 39, 51 Pac. 966, as a case in point that supports their contention. We have made a careful investigation of the authorities of the various states upon the issue here presented, and the above cited case is the only one we have found that does support defendants' contention, which, in the absence of a direct and explicit statute, gives the materialmen and mechanics a l'en upon the improvements constructed upon mortgaged land superior to a prior recorded mortgage. The above

cited case seems to stand alone and unsupported in the State of Kansas even. It is in direct conflict with prior and subsequent decisions from that state (*Martsolf v. Barnwell*, 15 Kan. 612; *Kansas Mfg. Co. v. Weyerhauser*, 48 Kan. 335, 29 Pac. 153; *New Hampshire Savings Bank v. Varner*, 216 Fed. 721, 132 C. C. A. 631), although strangely it does not expressly overrule prior conflicting opinions, and subsequent conflicting opinions do not expressly overrule it or refer to it. It will be noted that we obtained our mechanic's lien law from Kansas, and upon the point here involved the two statutes are still the same, and while the case cited was rendered subsequent to our adoption of the statute, yet it would be strongly persuasive here, if its standing in the State of Kansas were unquestioned; but it is unsupported by a single authority, as far as we have been able to find, from any other state wh'ch does not have a specific statute authorizing it. Even in this case we find the following extract:

"So it will be seen the court not only held, in effect, that as between the parties claiming liens for work and the material furnished in the construction of the house and the judgment lienors the property was exempt as a homestead of the Hudsons, because it could not have found that the l'ens of the mechanics and materialmen were superior to the liens of the judgment creditors under any other theory."

So, while this authority appears to be in point, yet for the reason that it is contradictory within itself and stands alone, unsupported either in the State of Kansas or elsewhere, we do not bel'eve it can be accepted as controlling authority.

The case of *Cooley v. Black*, 105 Ky. 267, 48 S. W. 1075, is based upon the following statute of that state:

"A person who performs labor or furnishes materials in the erection, altering, or repairing a house, building, or other structure, * * * by contract with or by the written consent of the owner, shall have a l'en thereon and upon the land upon which such improvements may have been made, or on any interest such owner has in the same, to secure the amount thereof, with costs."

And that court holds as follows:

"When the material used was placed in the building it became part of the realty. It no longer retained its character of personalty. Such labor as was done to make this conversion contributed to that end, and the character of th's labor could not change the nature which the property assumed after it had been so converted. At the moment the material was placed in the building the title to it vested in the owner, subject to such liens as by law existed on the freehold. The improvement made is part of the freehold. It is hardly necessary to observe that when a lien is created upon the realty it embraces all permanent improvements thereafter placed upon it. It is contended that a lien attached in favor of the contractors the instant material was placed in the building, and therefore it is argued that the contractors have a lien superior to that of the vendor on the building, but one inferior to his on the lots upon which it is erected. It is true that contractors, who erect a building under a contract with the owner of the soil, have a lien upon the building and the soil; not two distinct liens, a first lien upon the building and a subordinate one on the soil, but a lien upon the entirety, the land in its improved condition. The question in this case is: Did the Legislature intend to give mechanics and materialmen liens superior to that held by a vendor at the time they furnished material or performed labor in the erection of a building? The General Assembly could, as it did, say that the man who performs labor or furnishes material in the erection of a building has a lien upon it and upon the land upon which it stands. This lien, however, can exist notwithstanding a vendor had a lien upon

the real estate at the time the improvement was made. The declaration that a lien attaches in favor of the laborer or materialman does not indicate that the improvements made on the land are not to assume the nature of realty, and that the vendor's lien was not to continue to exist thereon in the same manner as it would have done before the enactment of the mechanic's lien law. Before we could hold that the lawmaking power intended that the laborer or contractor was to have a lien superior to that of a vendor, some language would have to be used which clearly manifested that purpose. Phil. Mech. Liens, sec. 237, says: 'Does a prior mortgage on land, which is subsequently improved by buildings, extend its lien over the latter, to the exclusion of mechan'cs who erected them? In answer it has been said that the lien created by the statute does not and cannot interfere with the prior incumbrance created by mortgage upon the land on which the building is erected. It is equally clear, upon the principles of the common law, and independent of any statutory provis'on, that any building or improvement erected upon land subsequent to the execution of the mortgage, becomes a part of the land, and subject to the existing incumbrance. And it may be safely affirmed that a mortgagee cannot be deprived of the benefit derived from subsequent improvement, except by clear and express legislative provision. In case of doubt, h's acknowledged common-law right would prevail.' It is insisted that because the act of 1834 contained a proviso that the act should not be construed to affect or impair liens, etc., on the property, and as this proviso was not carried nto the law as found in the General Statutes, therefore the legislature manifested an intention to make a mechanic's lien superior to all liens existing at the time the mechanic's lien attached. If this reasoning be sound, then the mechanic's lien would be super'or to the existing liens on the land as well as the building erected thereon. The General Assembly did not know what construction parties and the courts might place on the act of 1834; hence gave a rule of interpretation. This court construed the act of 1834 in *Orr*

*v. Batterton,* 14 B. Mon. (Ky.) 100, and said: 'Now, there can be no doubt that, independent of the law which gives a lien to the mechanic, the property, in its improved condition, if the vendee had made any improvements upon it, was subject to the vendor's lien. It follows, therefore, as an inevitable consequence, as this law does not affect or injure the lien of the vendor, that it has to be first satisfied, and the lien on the property given to the mechanic is entirely subordinate to it.' The court recognized that the General Assembly did not intend to injure or impair liens existing at the time the labor was performed or material furnished in the erection of a building, and independent of the purpose to do so, such liens would not injure such pre-existing liens. The General Assembly, in view of that decision and through the exercise of its knowledge as to the rules of interpretation of statutes, deemed it unnecessary to prescribe a rule for construing subsequent acts giving liens to mechanics for labor performed and material furnished, etc. So far as we are aware, no case has arisen since *Orr v. Batterton,* until this one, except under a special statute, in which it was claimed that the General Assembly intended to give laborers and materialmen a lien superior to that of a vendor. For the courts to have given the statute the construction which appellants claim is the proper one would have produced great complications in the settlement of conflicting claims; hence much litigation. Indeed, such a construction would have interfered with the sale of land, especially lots in cities and towns. Besides, it would have deterred people from loaning money to, and taking mortgages from, persons who desired to build houses or engage in business enterprises. As the record of the county court showed appellee's lien existed, the appellants were charged with notice thereof. With that knowledge, they chose to risk the expenditure necessary to perform their contracts, and they cannot now complain that the result is a hardship upon them."

18—52

We quote from the case of *Allis-Chalmers Co. v. Central Trust Co.*, 190 Fed. 704, 111 C. C. A. 428, 39 L. R. A. (N. S.) 84:

"While statutes giving liens to laborers and to those who furnish materials are to be liberally construed, yet, in the absence of a clear expression of the Legislature, the courts should not adopt by a construction of doubtful language a rule that would unsettle the rights of mortgagees or impair their security. We concur in the view of the learned circuit judge that there is no just reason why the statute should be extended by construction to a mortgagee out of possession. One who contracts with the owner of land to furnish labor and materials, or one who, with his consent, furnishes materials, is assumed to know, if a mortgage is recorded, that the consent of the mortgagor as owner can give a lien only to the extent of the mortgagor's interest. * * * He has no reasonable ground for an expectation or belief that a mortgagee who has advanced money upon the security of the land or on the improvements to be made thereon is willing to forego this security, even if the money is advanced for the purpose of placing improvements upon the land. * * * Whoever undertakes construction work upon property subject to a recorded mortgage must be assumed to have relied upon the personal responsibility of the other party to the contract, and upon such liens as the statute grants in definite terms, and not upon the expectation of displacing the priority of mortgage liens. The argument that there is some sort of superior equity in claims for work and materials over liens for money previously advanced upon mortgage is without merit, and the chancellor cannot apply such a principle either to displace vested liens or to broaden a lien statute by a construction which disregards absolutely the rights in a mortgage security."

We take the following excerpt from the case of *Martsolf v. Barnwell*, 15 Kan. 612:

"Which lien was prior? Barnwell claimed a mortgage; Martsolf a mechanic's lien. Barnwell's mortgage was executed and recorded August 21, 1871; Martsolf's contract for work was executed, and his work commenced, August 23, 1871. Upon this alone Barnwell would have unquestioned priority. As against this it is claimed that prior to the execution of the mortgage there was an understanding between the mortgagee, the lot owner, and Martsolf, by which Martsolf was to erect a building, and the mortgagee was to advance to the lot owner the money needed to pay for the work as it progressed, and that the mortgagee had actually drawn up the contract for the work between the lot owner and Martsolf, and that from that understanding Martsolf had a right to suppose, on the 23d, when he executed his contract and commenced work, that no money had actually been advanced or mortgage executed. We fail to appreciate the force of this argument. * * * The mortgage was on record, and Martsolf was chargeable with notice of its existence. He could acquire no rights against it, or in precedence to it. If doubtful about payment, or unwill'ng to risk the security of the second lien, he could decline the proposed contract."

In *Fuller v. Pauley et al.*, 48 Neb. 138, 66 N. W. 1115, we find the following syllabus:

"A person who furnishes materials for use in the erection of buildings on land to one in possession thereof, under contract of sale, may acquire a mechanic's lien on the premises for any unpaid amount of the pr'ce of the materials; but, if there is no agreement between the vendor and vendee of the land that the improvement shall be made, the lien can only attach to the interest of the vendee, and will be subsequent and inferior to the lien of the vendor for any balance of the purchase price of the land remaining unpaid."

See *Culmer Paint & Glass Co. v. Gleason*, 42 Utah, 344, 130 Pac. 66; *Brace v. Superior Land Co. et al.*, 65

Wash. 681, 118 Pac. 910; *New Hampshire Savings Bank et al. v. Varner*, 216 Fed. 721, 132 C. C. A. 631; *Fanning et al. v. Belle Terre Estates, Inc.*, 152 App. Div. 718, 137 N. Y. Supp. 595; *Cady Lbr. Co. v. Miles*, 96.Neb. 107, 147 N. W. 210; *Allis-Chalmers Co. v. Central Trust Co.*, 190 Fed. 700, 111 C. C. A. 428, 39 L. R. A. (N. S.) 84; *Morse and Others .v. Dole and Others*, 73 Me. 351; *Roper et al. v. Nat. Fire Ins. Co.*, 161 N. C. 151, 76 S. E. 869; *Cox et al. v. New Bern Lighting & Fuel Co.*, 152 N. C. 164, 67 S. E. 477; *Pickens v. Plattsmouth Inv. Co.*, 37 Neb. 272, 55 N. W. 947; *Fuller v. Pauley*, 48 Neb. 138, 66 N. W. 1115; *New· Memphis Gaslight Co. Cases*, 105 Tenn. 268, 60 S. W. 206, 80 Am. St. Rep. 880; *Baker v. Robbins et al.*, 119 N. C. 289, 25 S. E. 876; *Huffman v. Moore's Adm'r*, 101 Ky. 288, 41 S. W. 292; *Cooley et al. v. Black*, 105 Ky. 267, 48 S. W. 1075; *Getto et al. v. Friend et al.*, 46 Kan. 24, 26 Pac. 473; *Hoagland et al. v. Lowe et al.*, 39 Neb. 397, 58 N. W. 197; *Malmgren et al. v. Phinney et al.*, 50 Minn. 457, 52 N. W. 915, 18 L. R. A. 753; *Miller et al. v. Stoddard et al.*, 50 Minn. 272, 52 N. W. 895, 16 L. R. A. 288; *Wimberly v. Mayberry*, 94 Ala. 240, 10 South. 157, 14 L. R. A. 305.

As said before, there are many states which permit materialmen and mechanics who furnish material and labor to improve land upon which there is a prior recorded mortgage, to obtain a lien on the improvements so constructed superior to the mortgage lien, but such priority operates only upon the improvements, the mortgage holder still retaining his priority as to the land; but, as this rule contravenes the common law, it cannot be done. in the absence of an express statute which plainly authorizes it. It will be noted that statutes which authorize it are clear and explicit, and leave nothing to conjecture. The statute of the State of Texas thereon, which allows the materialmen

and mechanics a prior lien on the improvements, is as follows:

Sayles' Supp. Rev. St. art. 3171: "The lien herein provided for shall attach to the houses, buildings, or improvements for which they were furnished, or the work was done in preference to any prior lien or incumbrance, or mortgage upon the land upon which houses, buildings, or improvements have been put or labor performed, and the person enforcing the same may have such house, building, or improvement sold separately."

The statute of the State of Iowa upon the same subject is as follows: Subdivision 4 of section 3317 of McClain's Code, which, so far as material, is as follows:

"The liens for the things aforesaid or the work, including those for additions, repairs and betterments, shall attach to the buildings, erections or improvements for which they were furnished or done, in preference to any prior lien or incumbrance or mortgage upon the land upon which such erection, building, or improvement belongs, or is erected or put."

The statute of Montana is to the same effect. Liens for labor or materials shall attach to the buildings or improvements for which the materials were furnished or work done, in preference to any prior lien or incumbrance. Rev. Codes Mont., sec. 7295.

See *Carriger v. Mackey*, 15 Ind. App. 392, 44 N. E. 266; *Land Mtg. Bank v. Quanah Hotel Co.*, 89 Tex. 332, 34 S. W. 730; *Tower v. Moore*, 104 Iowa, 345, 73 N. W. 823; *Joralmon v. McPhee*, 31 Colo. 26, 71 Pac. 419; *Grand Opera House Co. v. Maguire*, 14 Mont. 558, 37 Pac. 607; *Bell v. Groves*, 20 Wash. 602, 56 Pac. 401; *Johnson v. Puritan Mining & Milling Co.*, 19 Mont. 30, 47 Pac. 337.

Compare the language used in the above statutes with our own upon the same subject, which, referring to liens of

materialmen and mechanics so far as applicable, is as follows:

"Such liens shall be preferred to all other liens or incumbrances which may attach to or upon such land, buildings or improvements or either of them, subsequent to the commencement of such building." (St. 1893, sec. 4527, as amended by Laws 1905, p. 316; section 3862, Rev. Laws Okla. 1910.)

No fair interpretation placed upon our statute as above set out will justify the construction insisted upon by the plaintiffs in error. The Legislatures of other states in enacting such a provision have not found it necessary to so word the statute thereon as to leave the matter in doubt or open to surmise. It is our duty here to construe the law as we find it and to leave the enactment of laws to the Legislature. Should the Legislature desire to enact such a provision as defendants here contend for, they will find precedent to guide them from many states; but before we can take the liberty to supplant a recorded mortgage with a subsequent lien without the holder's consent, the law under which it is done should be couched in such clear and unambiguous terms that one who accepts a mortgage upon a tract of land may know that it is possible to improve him out of his security without his consent. Such a radical law should and can be made manifest in language of plain and definite meaning, and should not be left open to surmise, conjecture, or doubtful construction.

Our statute does not make a mechanic's lien operate on the improvements alone, but makes the lien of the mechanic or materialman effective upon the lands and improvements. Rev. Laws 1910, sec. 3862. It will be noted that our statute does not in any way pretend to separate lands and improvements for the purpose of fixing any lien.

This statute simply assumes the doctrine existing at common law that improvements become a part of the realty and provides a priority of a mechanic and materialman against any liens that may attach to the land "subsequent to the commencement of such building."

Neither do we think the mere knowledge of the plaintiff that Basham intended to improve the land upon which he executed the mortgage to plaintiff, or the knowledge that he was improving it after the giving of the mortgage, can avail defendants to subordinate the mortgage to plaintiff to after-acquired liens. *Holmes v. Hutchins,* 38 Neb. 601, 57 N. W. 514.

It is insisted that those of the defendants who performed labor in the erection of the said improvements upon the land in controversy, by virtue of the provisions of chapter 114, Session Laws of 1911, are given a prior lien upon the said improvements over plaintiff's mortgage. Sections 1 and 5 of said chapter 114 are as follows:

Section 1: "Laborers who perform work and labor for any person under a verbal or written contract, if unpaid for the same, shall have a lien on the production of their labor, for such work and labor: Provided, that such lien shall attach only while the title to the property remains in the original owner."

Section 5: "Liens created under this act shall take precedence over all other liens whether created prior or subsequent to the laboror's lien herein created and provided."

Section 1 is comprehensive, and gives laborers a lien on "the production of their labors"; and this lien is not limited to personal property, but was evidently intended to cover all kinds of property. At least we are unable to infer that it was intended to limit the lien to personal property

only. Section 5 expressly states that these liens are to take precedence over all other liens, whether prior or subsequent. This statute is evidently remedial, and intended to reach just such instances as we find in the case at bar.

It is recommended that the judgment of the lower court as to those defendants who furnished material, to wit, A. M. De Bolt, E. J. N. Vonderslice, Hubb City Lumber Company, Klein Hardware Company, and Chas. E. Negiard, be affirmed, and that the judgment of the lower court as to those defendants who performed labor in the construction of the improvements upon the premises in controversy, to wit, L. G. Mades, W. H. Adams, G. M. Parker, J. H. Roberts, Jim Moore, Jesse Parker, W. D. Olney, John Peltier, R. J. Bell, Geo. Fiefel, J. Strong, and J. P. Irby, be modified, so as to give them a lien upon the buildings constructed upon the land in controversy prior and superior to the lien of plaintiff upon the said buildings, and that, if said judgments of the last-named defendants are not paid in 30 days, then an execution shall issue, and said buildings levied upon and sold to satisfy said judgments held by the above parties last named.

The judgment, so modified, should be affirmed. and the costs of appeal divided between appellant materialmen and defendant in error.

By the Court: It is so ordered.